**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 1 3 2013

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

BEAN LUMBER COMPANY, INC. and GRADY BEAN,                    **PLAINTIFFS**
Individually and as a Third-Party Beneficiary of the *Terms
Sheet* and *Engagement Agreement* Executed by Himself,
Bean Lumber Company, Inc., Malteco Group, Inc. a/k/a
Malteco Business Consulting Group and/or Malteco
Business Consulting and Willy Andreas Kirsch a/k/a Andy
Kirsch

CASE NO. 4:13-CV-718 JMM

MALTECO BUSINESS CONSULTING GROUP, INC.                     **DEFENDANTS**
A/K/A MALTECO BUSINESS CONSULTING GROUP
and/or MALTECO BUSINESS CONSULTING;
MALTEK INTERNATIONAL, SARL; WILLY
ANDREAS KIRSCH A/K/A ANDY KIRSCH;
LUCUANO CARMINO ZAMBRELLA; GARY
HACKER; GALLIN GROUP INTERNATIONAL; BEN
W. GALLINGER; ADMIRAL INSURANCE COMPANY;
BEHNKE & ASSOCIATES INSURANCE; JOHN
KIMMEY; JOHN DOES 1-25, said designation
representing the liability insurance carrier(s) if any entity
raises Charitable Immunity and the evolving law mandates
a direct action. As a matter of prudence, a direct action is
brought against the insurance company(ies) that are the
liability insurance carrier(s) for Malteco Business
Consulting Group, Inc. a/k/a Malteco Business Consulting
Group and/or Malteco Business Consulting, MALTEK
INTERNATIONAL, SARL and/or the Gallin Group
International; JOHN DOES 26-50, said designation
representing any and all employees, the Estate of any
Defendant who predeceases service of the *Complaint*, the
insurance carrier for the Defendant(s) and/or entity if a
direct action is allowed, required or proper pursuant to
applicable law and/or agents acting on behalf of Malteco
Business Consulting Group, Inc. a/k/a Malteco Business
Consulting Group and/or Malteco Business Consulting,
MALTEK INTERNATIONAL, SARL and/or the Gallin
Group International who assisted and aided, contributed

This case assigned to District Judge Moody
and to Marison

to and/or benefited directly, or indirectly, from the injury complained of herein; JOHN DOES 51-75, said designation representing the principal of any and all of the individual Defendants, whether named specifically herein, or named as a "John Does 26-50", as said entities are vicariously liable for any and all acts of negligence/fault perpetrated by their employees and/or agents; JOHN DOES 76-100, said designation representing all general partners, individuals and/or entities having an interest subjecting them/it to liability as a separate judicial entity for the acts of negligence and/or fraud alleged herein; and JOHN DOES 101-125, said designation representing all individuals and/or entities who aided, abetted, assisted, and/or conspired with the Defendants to engage in unconscionable, false and/or deceptive act(s) and/or practice(s) in business and harmed, defrauded and/or fraudulently induce the Plaintiffs into entering into a contract with Malteco, and/or provided promises to the Plaintiffs which caused them to delay seeking other means or avenues to prevent the injuries and/or damages they have sustained, at a time when said damages could have been alleviated and/or mitigated.

## COMPLAINT

Come now the Plaintiffs, Bean Lumber Company, Inc. ("Bean Lumber" hereinafter) and Grady Bean, Individually and as a Third-Party Beneficiary of the *Terms Sheet* and *Engagement Agreement* executed by himself, Bean Lumber, Malteco Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, and Willy Andreas Kirsch a/k/a Andy Kirsch, by and through their attorneys, the Boyd Law Firm, and for their *Complaint* against the aforementioned parties do state and allege as follows:

## I.  Jurisdiction and Venue

1.      The Plaintiff, Bean Lumber, was at all relevant times hereto a domestic corporation having its principal place of business located at 229 S. Spur Highway 8 North, Glenwood, Pike County, Arkansas 71943.

2.      The Plaintiff, Grady Bean, is, and was at all relevant times, a resident and citizen of Hot Springs, Garland County, Arkansas.

3.      This Court has jurisdiction over the parties herein and this cause of action, and venue is proper pursuant to 28 U.S.C. §1332(a)(3).

4.      Separate Defendant Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting was, at all relevant times, a foreign corporation having its principal place of business located at 1825 West Walnut Hill Lane, Suite 120, Irving, Texas 75038.  Upon information and belief, Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting is now located at 12700 Park Central Drive, #106, Dallas, Texas 75251-1513.

5.      Separate Defendant MALTEK INTERNATIONAL, SARL is an international foreign corporation located at Rue Lamartine 27, Geneva, Switzerland 1203 started by Willy Andreas Kirsch a/k/a Andy Kirsch, who is also the owner and President of Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting.

6.      Separate Defendant Willy Andreas Kirsch a/k/a Andy Kirsch ("Andy Kirsch" or "Kirsch" hereinafter), upon information and belief, is, and was at the time of the injury complained of herein, the owner and President of Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, and the co-owner and President of MALTEK

–3–

INTERNATIONAL, SARL.  At the time of the injury(ies) and/or damage(s) complained of herein, Defendant Kirsch, upon information and belief, was a resident of Irving, Dallas County, Texas.

7.      Separate Defendant Lucuano Carmino Zambrella ("Zambrella" hereinafter), upon information was, at all relevant times, the co-owner of MALTEK INTERNATIONAL, SARL.  At the time of the injury(ies) and/or damage(s) complained of herein, Defendant Zambrella, upon information and belief, was a resident of Geneva, Switzerland.

8.      Separate Defendant Gary Hacker ("Hacker" hereinafter), upon information and belief, is, and was at all relevant times, the President of Malteco Business Consulting Group and/or Malteco Business Consulting.  At the time of the injury(ies) and/or damage(s) complained of herein, Defendant Hacker, upon information and belief, was a resident and citizen of Irving, Dallas County, Texas.

9.      At all relevant times, separate Defendant Gallin Group International was a foreign corporation having its principal place of business in Portland, Multnomah County, Oregon.

10.     Separate Defendant Ben W. Gallinger was, at all relevant times, President of Gallin Group International.  At the time of the injury(ies) and/or damage(s) complained of herein, Defendant Gallinger, upon information and belief, was a resident and citizen of Portland, Multnomah County, Oregon.

11.     At all relevant times, separate Defendant Admiral Insurance Company was a Deleware Corporation with its principal place of business at 1000 Howard Boulevard, Suite 300, Mt. Laurel, New Jersey 08054.

12.     At all relevant times, separate Defendant Behnke & Associates Insurance was a Florida Corporation with its principal place(s) of business at 6565 Taft Street, Suite 104, Hollywood, Florida 33024 and/or 18503 Pines Boulevard, Suite 204, Pembroke, Florida 33029.

13.     Separate Defendant John Kimmey, upon information and belief, was a resident and citizen of McKinney and/or Irving, Dallas County, Texas at the time of the injury(ies) and/or damage(s) complained of herein.

14.     Defendants "John Does 1-25" is a designation representing the liability insurance carrier(s) of any entity that raises Charitable Immunity and/or the evolving law mandates a direct action. As a matter of prudence, a direct action is brought against the insurance company(ies) that are the liability insurance carrier(s) for Malteco Business Consulting Group, Inc., a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, MALTEK INTERNATIONAL, SARL and/or the Gallin Group International.

15.     Defendants "John Does 26-50" is a designation representing any and all employees, the Estate of any Defendant who predeceases service of the *Complaint*, the insurance carrier for the Defendant(s) and/or entity if a direct action is allowed, required, or proper pursuant to applicable law and/or agents acting on behalf of Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, MALTEK INTERNATIONAL, SARL and/or the Gallin Group International who assisted and aided, contributed to and/or benefited directly, or indirectly, from the injury(ies) and/or damage(s) complained of herein.  An *Affidavit* is attached hereto as *Exhibit A* in accordance with Ark. Code Ann. §16-56-125.

16.     Defendants "John Does 51-75" is a designation representing the principal of any and all of the individual Defendants, whether named specifically herein or named as a "John Does 26-50", as said entities are vicariously liable for any and all acts of negligence/fault/breaches of contract/fraud/or other cognizable cause of action perpetrated by their employees and/or agents.

17.     Defendants "John Does 76-100" is a designation representing all general partners or individuals and/or entities having an interest subjecting them/it to liability as a separate judicial entity for the acts of negligence and/or fraud alleged herein.   The Plaintiff will amend his *Complaint*, if necessary, to specifically name the proper individual Defendants as they are further identified.

18.     Defendants "John Does 101-125" is a designation representing all individuals and/or entities who aided, abetted, assisted, and/or conspired with the Defendants to engage in unconscionable, false and/or deceptive act(s) and/or practice(s) in business and harmed, defrauded and/or fraudulently induce the Plaintiffs into entering into a contract with Malteco, and/or provided promises to the Plaintiffs which caused them to delay seeking other means or avenues to prevent the injuries and/or damages they have sustained, at a time when said damages could have been alleviated and/or mitigated.

## II. The Facts

19.     At all times relevant hereto, the Plaintiff, Grady Bean, was the owner, operator and CEO of Bean Lumber.

20.     Separate Defendant Ben Gallinger, President of Gallin Group International, is a lumber broker and was, at the time of the injury(ies) and/or damage(s) complained of herein, a customer of Bean Lumber.  Defendant Gallinger knew that Bean Lumber was having financial problems and needed a cash infusion.  Therefore, Defendant Gallinger contacted the Plaintiffs in order to introduce the Plaintiffs to a "hard money guy" he knew in Dallas, Texas who brokered deals for large amounts of cash, with a short turn-around.

21.     After the Plaintiffs expressed interest in meeting Defendant Gallinger's "hard money guy", Defendant Gallinger contacted Separate Defendant John Kimmey, who then contacted the Plaintiffs.

22.     Separate Defendant Kimmey was the party responsible for brokering the business arrangement between the Plaintiffs and Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting (hereinafter collectively called "Malteco"), MALTEK INTERNATIONAL, SARL, Separate Defendant Andy Kirsch, Separate Defendant Zambrella, and/or, as appropriate, any Joe Doe Defendant generally named herein.

23.     Defendant Kimmey told the Plaintiffs that Defendant Kirsch, President and Owner of Malteco and MALTEK INTERNATIONAL, SARL, typically only entered into contracts for large investments, such as $300,000,000.00 to 500,000,000.00, but that Defendant Kirsch was willing to enter into a few smaller investment contracts as a favor to Defendant Kimmey.

24.     In early May of 2010, the Plaintiffs met Defendant Kimmey in person.  Defendant Kimmey seemed like a legitimate broker to the Plaintiffs, and was able to provide the Plaintiffs with copies and/or drafts of the contracts between Malteco and several other companies with which Defendant Kimmey was also working.  *See Exhibits B-D.*

25.     On May 26, 2010, the Plaintiffs received a *Terms Sheet*, which was already signed by Andy Kirsch on behalf of Malteco, and an *Engagement Agreement*.  *See Exhibits E* and *F, respectively*.

26.     According to the *Terms Sheet*, which was executed by the Plaintiffs and returned to Malteco on May 28, 2010, Malteco agreed to invest $10,000,000.00 into Bean Lumber in order to refinance the existing facility(ies)/buildings, retire specified liens associated with Bean Lumber and invest in Bean Lumber.  *See Exhibit E, pg. 1*.  However, before Malteco began paying Bean Lumber any

of the promised $10,000,000.00, Bean Lumber had to pay a "depository fee" of $125,000.00 by making an initial payment of $60,000.00 and subsequent payments of $16,250.00, bi-weekly, for four (4) months. *Id.* at 2. Bean Lumber was told that the $125,000.00 would be used to fund an insurance "wrap", to which Bean Lumber agreed in the *Engagement Agreement*, attached hereto as *Exhibit F.*

27.     Bean Lumber also agreed that, at closing, Malteco would receive a twenty-five percent (25%) equity interest in the company in the form of twenty-five percent (25%) co-ownership of the company and twenty-five percent (25%) voting rights. *Exhibit E* at 3. Malteco would also receive eight percent (8%) of the dividends from profits during the period of investment. *Id.*

28.     Pursuant to the *Terms Sheet*, Bean Lumber was supposed to receive an initial draw and/or "tranche" of $1,000,000.00 and eighteen (18) payments of $500,000.00 following the company's payment of the $125,000.00 "depository fee". *Id.*

29.     The Plaintiff wired $125,000.00 on behalf of himself and Bean Lumber to Malteco pursuant to the *Terms Sheet. See Exhibit G,* attached hereto. Defendants Kirsch and Kimmey told the Plaintiffs they would receive the initial $1,000,000.00 and/or "first tranche" by mid-July 1, 2010. The Plaintiffs did not receive these funds as promised.

30.     By August of 2010, Bean Lumber's lenders began getting nervous, fearing the possibility that Bean Lumber might never receive any of the $10,000,000.00. In an effort to stave off bankruptcy, the Plaintiffs requested proof, through Defendant Kimmey, that Defendant Kirsch and Malteco were legitimate and that Bean Lumber would be receiving the promised funds. *See Exhibit H,* attached hereto. In response, Defendant Kirsch sent the Plaintiffs a copy of his passport, an undated letter from Behnke & Associates Insurance, an *Evidence of Property Insurance* from Admiral Insurance Company and two (2) letters, one dated August 17, 2010 and one dated August 20, 2010. *See Exhibits I-M, respectively.* In the

letter dated August 17, 2010, Defendant Kirsch states that Malteco was experiencing delays moving the funds due to the "financial summer break and summer vacation in Europe". In the letter dated August 20, 2010, Defendant Kirsch again apologizes for the "financial summer break and summer vacation in Europe", and states that MALTEK INTERNATIONAL, SARL, the company funding Malteco, expected the funds to clear in seventeen (17) International and/or US bank workdays, given there were no "pending regulatory or banking compliance matters".

31.     The funds from the Defendant did not arrive in seventeen (17) "International and/or US bank workdays". From September of 2010 through November of 2010, Defendant Gary Hacker, who is, and was at the time, running Malteco in Texas, got involved in the communications between the Plaintiff and Defendant Kirsch. The Plaintiffs exchanged several emails with Defendant Hacker through the months of September, October and November of 2010 regarding the arrival of the first tranche. Defendant Hacker, on behalf of himself, Defendant Kirsch and Malteco, continuously assured the Plaintiffs that Bean Lumber would receive the promised funds pursuant to the *Terms Sheet* and *Engagement Agreement* entered into by the Plaintiffs and Malteco on May 28, 2010. For example:

a)     On October 20, 2010, Defendant Hacker sent an email to the Plaintiffs stating that Malteco was about ten (10) days away from cash, and that the bank had accepted a *Standby Letter of Credit* ("SBLC") via MT799. See *Exhibit N, attached hereto*;

b)     On October 26, 2010, the Plaintiffs emailed Defendant Hacker in an effort to follow-up Defendant Hacker's October 20, 2010 email and determine how Bean Lumber would receive the promised funds. In response, Defendant Hacker told the Plaintiffs that he and Defendant Kirsch had discussed how funds would be transmitted, but had not yet chosen a method. Defendant Hacker assured the Plaintiffs that Malteco would

use the quickest possible way to transmit the funds to Bean Lumber, and that the company was in the final stages of receiving the funds to provide to the Plaintiff. *See Exhibit O, attached hereto;* and

    c)    On November 8, 2010, Defendant Hacker told the Plaintiffs that he expected the funds to be available "the first part of next week". *See Exhibit P, attached hereto.*

    32.    The Plaintiffs were unable to get Defendant Hacker to respond to any of his calls or emails following the November 8, 2010 email.

    33.    Defendant Kirsch also continued to provide the Plaintiffs with a number of dates by which Bean Lumber could plan on receiving the promised funds, and then give the Plaintiffs excuses as to why the funds were not available on the promised date. For example, on October 3, 2010, Defendant Kirsch emailed the Plaintiffs and stated that the delay in funding was due to the bank issuing a SBLC, and not cash, for a line of credit which required Defendant Kirsch to monetize the SBLC. He apologized for the delay, and told the Plaintiffs that he expected funding "this week". *See Exhibit Q, attached hereto.*

    34.    On November 25, 2010, the Plaintiffs emailed Defendant Kirsch in an effort to explain to Defendant Kirsch Bean Lumber's dire need of the promised funding. The Plaintiffs wrote:

> I didn't hear from you yesterday and my main lender blew up. They are really upset that Gary told them money would be moving Tuesday and it didn't. They told me if money is not moving by the 30th [of November] they are calling my loan! They are owned by Caterpillar which is worldwide and they said they were going to contact the bank to verify the legitimacy of the loan. They are convinced we are never getting money. I really need some help here Andy. I need something legit to give them to calm down.

*See Exhibit R, attached hereto.*

35.     At the end of November of 2010, Bean Lumber ceased operations due to a lack of operating funds.

36.     On December 14, 2010, the Plaintiffs received news from Defendant Kirsch through Defendant Gallinger.  The Plaintiffs were told that Merrill Lynch had agreed to broker Malteco's deal, and that everything was "under control".  *See Exhibit S, attached hereto.*

37.     On December 15, 2010, after hearing about a possible connection between Defendant Kirsch and Garrison Securities, which had recently defrauded a number of their clients, as well as Malteco's failure to provide the Plaintiffs with any of the money promised in the *Terms Sheet* and *Engagement Agreement*, the Plaintiffs sent an email to Defendant Kimmey and Defendant Gallinger, wherein they announces that they are cutting ties with Kimmey, Gallinger and Defendant Kirsch.  *See Exhibits T* and *U, attached hereto.*

38.     On March 23, 2011, Defendant Kirsch's attorney, Billy Parlin, stated that his client had decided to refund the Plaintiff's "depository fee" by paying $12,000.00 bi-weekly.  *See Exhibit V, attached hereto.*  To date, the Plaintiff has only received $25,000.00.

39.     On June 25, 2013, Defendant Kirsch, through his attorney, Billy Parlin, continued making false promises regarding payment of the money owed to the Plaintiffs.  According to Mr. Parlin, the funds in question would be available within a "couple of weeks".  *See Exhibit W, attached hereto.*  To date, the Plaintiffs has not received any further payments from Malteco, MALTEK INTERNATIONAL, SARL and/or Defendant Kirsch.

### III.   COUNT I~ BREACH OF EXPRESS CONTRACT

40.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

–11–

41.     The *Terms Sheet* and *Engagement Agreement* attached hereto as *Exhibits E and F,* *respectively,* clearly, and in no uncertain terms, lay out the parties' agreement herein.  According to the *Terms Sheet,* which was executed by the Plaintiffs and Defendant Kirsch on May 28, 2010, Malteco agreed to invest $10,000,000.00 into Bean Lumber in order to refinance the existing facility(ies)/buildings, retire specified liens associated with Bean Lumber and invest in Bean Lumber. *See Exhibit E, pg. 1.*

42.     In consideration for this agreement, the Plaintiffs paid the requisite "depository fee" of $125,000.00 to Malteco to fund an insurance wrap, to which Bean Lumber agreed in the *Engagement Agreement.*  Bean Lumber wired an initial payment of $60,000.00 and subsequent payments of $16,250.00, bi-weekly, for four (4) months.  *Id.* at 2; *see also Exhibit G.*  Bean Lumber also agreed that, at closing, Malteco would receive a twenty-five percent (25%) equity interest in the company in the form of twenty-five percent (25%) co-ownership of the company and twenty-five percent (25%) voting rights. *Exhibit E* at 3.  Malteco stood to receive eight percent (8%) of the dividends from Bean Lumber's profits during the investment period pursuant to the *Terms Sheet.*  *Id.*

43.     In the *Terms Sheet,* Malteco agreed to pay Bean Lumber an initial draw of $1,000,000.00 and eighteen (18) payments of $500,000.00 following Bean Lumber's payment of the $125,000.00 "depository fee".  *Id.*  The Plaintiffs were told by Defendants John Kimmey and Andy Kirsch that they would receive the initial $1,000,000.00 and/or "first tranche" by mid-July 1, 2010.  The Plaintiffs did not receive these funds in accordance with the *Terms Sheet* and/or as promised by Separate Defendants Malteco, Kirsch and Kimmey.

44.     The Plaintiffs' return of the *Terms Sheet* and *Engagement Agreement,* which were signed by *both* Defendant Kirsch, on behalf of Malteco, and the Plaintiffs on May 28, 2010, as well as the

Plaintiffs' subsequent payment of the $125,000.00 depository fee, in accordance with the *Terms Sheet*, indicate that the Plaintiffs were unambiguously accepting the offer made by Malteco and/or Andy Kirsch in the *Terms Sheet* and *Engagement Agreement*. *See Exhibits E* and *F*. Furthermore, these two contracts and the numerous emails exchanged between Defendant Kirsch, Defendant Hacker and the Plaintiffs clearly show that the contracting parties had "a meeting of the minds" and understood and agreed to the basic substance and terms of the contract.

45.    Malteco, MALTEK INTERNATIONAL, SARL, Defendant Kirsch and/or Defendant Hacker's failure to advance, pay, or fund the $10,000,000.00 investment to Bean Lumber in order to refinance the existing facility(ies)/buildings, retire specified liens associated with Bean Lumber and invest in Bean Lumber qualifies as a "material breach" because Malteco, Defendant Kirsch and/or Defendant Hacker failed to perform an essential term(s) or condition(s) of the parties' written contract(s) that substantially defeats the purpose of the contracts for the Plaintiffs.

46.    As a result of the aforementioned Defendants' breach of express contract(s), the Plaintiffs pray for attorneys' fees, actual damages based on their actual loss, including damages incurred as a result of the bankruptcy of Bean Lumber, which was directly caused by the Defendants' breach of contract, lost wages, lost business proceeds, punitive damages, and consequential damages due to the fact that: (1) The Defendants knew that their failure to fulfill the contract(s) would result in consequential damages to the Plaintiff and Bean Lumber; and (2) that the circumstances under which the Defendants entered into this contract(s) were such that the Defendants knew, or should have known that the Defendants agreed to assume responsibility for any consequential damages incurred by the Plaintiffs as a result of their breach.

## IV.   COUNT II–BREACH OF IMPLIED CONTRACT

47.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

48.     Through the use of the *Terms Sheet*, *Engagement Agreement* and numerous letters and emails, Defendants Malteco, MALTEK INTERNATIONAL, SARL, Andy Kirsch and Gary Hacker made oral promises which said Defendants should have reasonably expected would induce action or forbearance on the part of the Plaintiffs. *See Exhibits E, F* and *I-M.*

49.     As a result of the Defendants' promises, the Plaintiffs wired $125,000.00 to Malteco pursuant to the terms of the Plaintiffs' agreement with the Defendants. *See Exhibit G.*

50.     Injustice can be avoided only by enforcing the promises made by the Defendants to the Plaintiffs and set forth in the *Terms Sheet*, *Engagement Agreement* and numerous letters and emails. *See Exhibits E-G* and *I-M.*

51.     As a result of the Defendants' breach of implied contract, the Plaintiffs pray for attorneys' fees, actual damages based on their actual loss, including damages incurred as a result of the bankruptcy of Bean Lumber, which was directly caused by the Defendants' breach of implied contract, lost wages, lost business proceeds, loss of reputation, mental anguish, punitive damages, and consequential damages due to the fact that: (1) The Defendants knew that their promises would induce action or forbearance on the Plaintiffs' part; and (2) the Plaintiffs did in fact act upon the Defendants' promises to their detriment.

## V.   COUNT III–COMMON LAW FRAUD, INTENTIONAL AND/OR NEGLIGENT MISREPRESENTATION, AND FRAUDULENT INDUCEMENT TO ENTER INTO A CONTRACT

52.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

53.     Defendants Malteco, MALTEK INTERNATIONAL, SARL, Andy Kirsch, John Kimmey, Ben Gallinger and Gary Hacker knowingly made false representations and/or negligent misrepresentations of material fact(s) to the Plaintiffs through the use of the *Terms Sheet, Engagement Agreement* and numerous letters and emails for the purpose of defrauding the Plaintiffs and inducing the Plaintiffs to wire $125,000.00 to Malteco.  *See Exhibits E, F* and *I-M.*  For example:

(a)     Separate Defendant Ben Gallinger induced the Plaintiffs into meeting a "friend of his" (Separate Defendant John Kimmey) that could help alleviate the financial problems with which Bean Lumber was dealing by making false promises of procuring a big loan for the company in a small amount of time.   Defendant Gallinger knew Defendants John Kimmey and Andy Kirsch, and also knew that Defendant Kimmey did not usually work with companies like Bean Lumber and that Defendants Kirsch and Malteco were not a reliable source of operating funds and business investment proceeds.

(b)     Defendant John Kimmey also induced the Plaintiffs into letting him broker a deal between Malteco, Andy Kirsch, Bean Lumber and the Plaintiffs by making false promises of helping the Plaintiffs save Bean Lumber by procuring a large loan in a small amount of time, despite the fact that Defendant Kimmey knew that neither Defendants Kirsch nor Malteco typically worked with companies like Bean Lumber, that Defendants Malteco and Andy Kirsch were not a reliable source of operating funds and business investment proceeds and that Defendants Kirsch and Malteco did not pay the promised

–15–

and contracted investments after they received "depository fees" from the companies they were defrauding.

(c)     Defendant Andy Kirsch intentionally induced the Plaintiffs into entering into a fraudulent contract with Malteco on behalf of Bean Lumber by offering the Plaintiffs a large loan in a small amount of time, collecting the $125,000.00 depository fee, which Defendant Kirsch claimed was required for an "insurance wrap" prior to Malteco's delivery of any of the promised investment funds and subsequently failing to ever make any payments to the Plaintiffs pursuant to the terms of the contracts signed by the Plaintiffs, Malteco and Andy Kirsch.   Defendant Andy Kirsch entered into the *Terms Sheet* and *Engagement Agreement* on behalf of Defendant Malteco knowing that neither he nor the company had, or could obtain, $10,000,000.00 to honor their contract with the Plaintiffs.   Despite this knowledge, Defendants Kirsch and Malteco still accepted the $125,000.00 depository fee and, thereafter, continuously promised the Plaintiffs that the investment funds were "on their way".

(d)     Defendant Gene Hacker knew of Defendant Kirsch, Kimmey, Gallinger and Malteco's fraudulent scheme and helped his Co-Defendants further defraud the Plaintiffs between September and December of 2010 by concocting reasons for Defendant Kirsch's unavailability, giving the Plaintiffs false hope on occasions by providing them with dates by which to expect the investment proceeds from Defendants Kirsch and Malteco and by coming up with reasons why the investment proceeds would never arrive on the scheduled dates.

54.     The Plaintiffs justifiably relied on the Defendants' intentional and/or negligent misrepresentations in entering into the contract with Maltect and, as a direct result of these misrepresentations, the Plaintiffs wired $125,000.00 to Malteco pursuant to the terms of the Plaintiffs' agreement with the Defendants. *See Exhibit G.*

55.     The actions of the Defendants, as alleged herein, constitute common law fraud, deceit, and intentional and/or negligent misrepresentation, all of which allow the Plaintiffs to proceed to the jury on the issues of compensatory and punitive damages based on the following elements:

(a)     Plaintiffs have sustained damages;

(b)     Defendants made false representations of a material fact;

(c)     In the alternative, the Defendants either knew or believed that the representation was false, or knew that they did not have a sufficient basis of information to make the representation;

(d)     Defendants intended to induce the Plaintiffs to act in reliance upon this misrepresentation; and

(e)     Plaintiffs justifiably relied upon the representation in acting, or refraining from acting, and as a result sustained damages.  The exact amount of said damages is left to the discretion of the jury, but the Plaintiffs are entitled to, and therefore seek, a figure in excess of the figure necessary to satisfy the jurisdictional limits of this Court, or any Court to which this matter may be transferred and/or removed.

56.     As a result of the Defendants' intentional misrepresentations, the Plaintiffs have incurred attorneys' fees for having to prosecute this action and has suffered actual damages, lost wages, lost business proceeds, loss of reputation, mental anguish, punitive damages, and consequential damages,

including damages incurred as a result of the bankruptcy of Bean Lumber, which was directly caused by the Defendants' intentional misrepresentations.

### VI.   COUNT IV–VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

57.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

58.    The Plaintiffs are entitled to recover from the Defendants because the Defendants are guilty of violating, jointly and severally, the *Arkansas Deceptive Trade Practices Act* codified at Ark. Code Ann. §4-88-101, *et seq.*

59.    The Defendants' violations of this statute specifically include, but are not limited to, a violation of Ark. Code Ann. §4-88-107, entitled "Deceptive and Unconscionable Trade Practices" and Ark. Code Ann. §4-88-108, entitled "Unlawful Acts."   The basis for the egregious nature of the Defendants' actions and/or conduct has been spelled out herein.

60.    The damages suffered by the Plaintiffs are a direct result of the Defendants' violations of the *Arkansas Deceptive Trade Practices Act* and, as such, the Defendants are liable to the Plaintiffs for actual damages, compensatory damages, treble damages by statute, punitive damages, and attorneys' fees under applicable law.   In addition to all other damages, the Defendants are also liable to the Plaintiffs for those damages spelled out in Ark. Code Ann. §4-80-113.

### VII.   COUNT V—AGENT IN FACT AND THIRD PARTY BENEFICIARY THEORY

61.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

62.    Upon information and belief, Malteco and MALTEK INTERNATIONAL, SARL controlled or had the right to control, in minute detail, the manner and methods used by its agents

and/or representatives to enter into contracts with individuals and/or businesses such as the Plaintiffs, specifically including, but not limited to the following:

(a)     The individuals used to broker each agreement with Malteco and/or MALTEK INTERNATIONAL, SARL;

(b)     The fees required of the individual(s) and/or business(es) upon entering into a contract with Malteco and/or MALTEK INTERNATIONAL, SARL;

(c)     The amount of money offered to each individual and/or business under its/his contract with Malteco and/or MALTEK INTERNATIONAL, SARL; and

(d)     The conditions under which each contract with Malteco and/or MALTEK INTERNATIONAL, SARL was entered.

63.     Based on the points outlined hereinabove, and the totality of control evidenced by the facts set forth herein, and *Terms Sheet* and *Engagement Agreement*, attached hereto as *Exhibits E* and *F*, Malteco and MALTEK INTERNATIONAL, SARL exercised minute control over the manner and methods used by its agents and/or representatives to enter into contracts with individuals and businesses such as the Plaintiffs so that an agency relationship existed between Malteco and MALTEK INTERNATIONAL, SARL and Andy Kirsch Lucuano Zambrella, Gary Hacker, Gallin Group International, Ben Gallinger, Admiral Insurance Company, Behnke & Associates Insurance, John Kimmey, and/or, as appropriate, any John Doe Defendant generally named herein.

64.     In the alternative, because Malteco and MALTEK INTERNATIONAL, SARL did exercise minute control over the day to day activities of Andy Kirsch Lucuano Zambrella, Gary Hacker, Gallin Group International, Ben Gallinger, Admiral Insurance Company, Behnke & Associates Insurance, John Kimmey, and/or, as appropriate, any John Doe Defendant generally named herein,

Malteco either knew, or should have known, that the co-Defendants named herein were incompetent and/or dishonest in some manner, or otherwise incapable or unable to perform the necessary acts and deeds promised, and the Plaintiffs would sustain damages as a result of same.

65.     The *Terms Sheet* and *Engagement Agreement* between the Plaintiffs and Malteco listed Grady Bean individually, and as a member of the class of individuals said contract(s) sought to benefit as Vice President and CEO of Bean Lumber.  As such, the Plaintiff, Grady Bean, is a third party beneficiary of the contract at issue, with the concurrent right to recover based on the tortious acts of Malteco, and the breaches of contract and other wrongdoing spelled out in each and every *Count* of this *Complaint.*  Additionally, Plaintiff Grady Bean is entitled to recover for any and all breaches of the contract which were a proximate cause of the damages the Plaintiffs sustained.

66.     In addition to compensatory damages prayed for by the Plaintiffs heretofore, the Plaintiffs are also entitled to seek punitive damages from the Defendants because the Defendants knew, or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in the Plaintiffs being damaged, and continued such conduct with malice, or in reckless disregard of the consequences from which malice may be inferred, or, the Defendants intentionally pursued a course of conduct for the purpose of causing the Plaintiff to incur the damages prayed for herein.

### VIII.   COUNT VI-VIOLATION OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 PURSUANT TO 15 U.S.C. §78u-4

67.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

68.     The *Private Securities Litigation Reform Act of 1995*, set forth in 15 U.S.C. §78u-4(b), states:

**Requirements for securities fraud actions**

**(1) Misleading statements and omissions**

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

> **(A)** made an untrue statement of a material fact; or
>
> **(B)** omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

**(2) Required state of mind**

> **(A) In general**
>
> Except as provided in subparagraph (B), in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

69.     Defendants Malteco, MALTEK INTERNATIONAL, SARL, Andy Kirsch, Lucuano Carmino Zambrella, John Kimmey and Gary Hacker knowingly and recklessly made untrue statements and representations of material fact to the Plaintiffs through the use of the *Terms Sheet, Engagement Agreement* and numerous letters and emails for the purpose of inducing the Plaintiffs to wire $125,000.00 to Malteco. *See Exhibits E, F* and *I-M.* For example:

> (a)     Separate Defendant Ben Gallinger induced the Plaintiffs into meeting a "friend of his" (Separate Defendant John Kimmey) that could help Defendant Gallinger knew Defendants John Kimmey and Andy Kirsch, and also knew that Defendant Kimmey did

not usually work with companies like Bean Lumber and that Defendants Kirsch and Malteco were not a reliable source of operating funds and business investment proceeds.

(b)     Defendant John Kimmey induced the Plaintiffs into letting him broker a deal between the Plaintiffs, Malteco and Andy Kirsch by knowingly and recklessly making false promises of alleviating the financial problems with which Bean Lumber was dealing by arranging the procurement of a large loan for the company in a small amount of time, despite the fact that Defendant Kimmey knew that neither Defendants Kirsch nor Malteco typically worked with companies like Bean Lumber, that Defendants Malteco and Andy Kirsch were not a reliable source of operating funds and business investment proceeds and that Defendants Kirsch and Malteco did not pay the promised and contracted investments after they received "depository fees" from the companies they were defrauding.

(c)     Defendant Andy Kirsch knowingly and recklessly induced the Plaintiffs into entering into a fraudulent contract with Malteco on behalf of Bean Lumber by offering the Plaintiffs a large loan in a small amount of time, collecting the $125,000.00 depository fee and subsequently failing to ever make any payments to the Plaintiffs pursuant to the terms of the contracts signed by the Plaintiffs, Malteco and Andy Kirsch. Defendant Andy Kirsch entered into the *Terms Sheet* and *Engagement Agreement* on behalf of Defendant Malteco knowing that neither he nor the company had, or could obtain, $10,000,000.00 to honor their contract with the Plaintiffs.  Despite this knowledge, Defendants Kirsch and Malteco still accepted the $125,000.00 depository fee and,

thereafter, continuously promised the Plaintiffs that the investment funds were "on their way".

(d)     Defendant Gene Hacker knew of Defendant Kirsch, Kimmey, Gallinger and Malteco's fraudulent scheme and helped his Co-Defendants further defraud the Plaintiffs between September and December of 2010 by knowingly and recklessly concocting reasons for Defendant Kirsch's unavailability, giving the Plaintiffs false hope on occasions by providing them with dates by which to expect the investment proceeds from Defendants Kirsch and Malteco and by coming up with reasons why the investment proceeds would never arrive on the scheduled dates.

70.     The Plaintiffs relied on the Defendants' intentional misrepresentations of material fact and wired $125,000.00 to Malteco pursuant to the terms of the Plaintiffs' agreement with the Defendants.  Although the *Terms Sheet* and *Engagement Agreement*, signed by both the Plaintiffs and Defendant Andy Kirsch, on behalf of Malteco, specifically stated that Malteco would invest $10,000,000.00 into Bean Lumber following their receipt of the Plaintiffs' $125,000.00, Malteco, MALTEK INTERNATIONAL, SARL, Lucuano Carmino Zambrella , Gary Hacker and Andy Kirsch failed to send any investment funds to the Plaintiffs.

71.     As a direct result of the Defendants' intentional misrepresentations, the Plaintiffs have incurred attorney's fees for having to prosecute this action and have suffered actual damages, lost wages, loss of business proceeds, punitive damages, and consequential damages, including damages incurred as a result of the bankruptcy of Bean Lumber.

## IX.   COUNT VII-VIOLATION OF THE *RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT* ("RICO") BY WIRE FRAUD PURSUANT TO 18 U.S.C. §1343

72.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

73.     Defendants Malteco, MALTEK INTERNATIONAL, SARL, Andy Kirsch, John Kimmey, Ben Gallinger and Gary Hacker knowingly and intentionally made false representations to the Plaintiffs through the use of the *Terms Sheet*, *Engagement Agreement* and numerous letters and electronic communications for the purpose of defrauding the Plaintiffs and inducing the Plaintiffs into wire $125,000.00 to Malteco in violation of 18 U.S.C. §1343. *See Exhibits E-G* and *I-M.*

74.     It was reasonably foreseeable that interstate wire communications would be used in furtherance of this scheme, as Defendants Kirsch and Malteco specifically requested this form of monetary exchange.

75.     Interstate wire communications were in fact used in furtherance of the Defendants' fraudulent plan to knowingly and intentionally induce the Plaintiff into wiring $125,000.00 to Malteco. *See Exhibit G.*

76.     As a result of the Defendants' knowing and intentional false representations, the Plaintiffs have incurred attorneys' fees for having to prosecute this action and has suffered actual damages, lost wages, loss of business proceeds and consequential damages, including damages incurred as a result of the bankruptcy of Bean Lumber, which was directly caused by the Defendants' intentional misrepresentations. Therefore, pursuant to 18 U.S.C. §1343, the Plaintiff prays for his attorneys' fees and for treble damages to be assessed against the Defendants herein.

## X.  COUNT VIII-PARTIAL PAYMENT AS ADMISSION AND/OR IMPLIED PROMISE

77.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

78.     In the alternative, due to the actions and/or inactions of the In light of Bean Lumber's bankruptcy, Separate Defendants Malteco and Andy Kirsch, through their attorney, decided that they could not honor their contractual agreement with the Plaintiffs and instead agreed to refund the Plaintiffs' $125,000.00 in $12,000.00 payments made every other week. *See Exhibit U, attached hereto.*

79.     On May 11, 2011, the Plaintiff received $25,000.00 from the Defendants. *See Exhibit V, attached hereto.*  The Plaintiffs have not received any other payments from the Defendants since this initial payment of $25,000.00, despite the fact that the Plaintiffs have continued to ask the Defendant's attorney about said payments himself, and through his attorney.

80.     Partial Payment is treated as an admission of the continued existence of a debt and an implied promise to pay the balance.  *Johnson v. Spangler*, 176 Ark. 328, 2 S.W. 2d 1089 (1928). According to the Arkansas Supreme Court:

> The part payment must be under such circumstances as reasonably, and by fair implication, lead to the inference that the debtor intended to renew his promise of payment and must have been made by the debtor in person, or by someone authorized by the debtor to make a new promise on his behalf.

*Id.* (*citing Taylor v. Foster*, 132 Mass. 33).

81.     The correspondence from Defendants Malteco and Kirsch's attorney, attached hereto as *Exhibits V* and *W*, along with the Defendants' partial repayment of the Plaintiff's $125,000.00, clearly show that the Defendants intended to renew their promise of payment through the use of their attorney.

## XI. DAMAGES

82.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

83.     Plaintiffs are entitled to actual, compensatory, and/or punitive damages for the reasons stated and alleged in each and every *Count* of this *Complaint*, as spelled out hereinabove.  In many of the *Counts*, the measure of damages to which the Plaintiffs are entitled are spelled out therein and/or in the applicable statute(s) and/or the statutory relief/damages to which the Plaintiffs are entitled is designated.  The Plaintiffs' cause of action, as spelled out herein, is difficult to quantify numerically at this stage of the proceedings.  These damages specifically include, but are not limited to:

(a)     Actual damages based on their actual loss, including damages incurred as a result of the bankruptcy of Bean Lumber, which was directly caused by the Defendants' breach of express and implied contract;

(b)     The value of any earnings, profits, salary, and working time lost and the present value of same reasonably certain to be lost in the future;

(c)     The present value of any loss of ability to earn in the future;

(d)     Lost business proceeds;

(e)     Loss of reputation;

(f)     Pain, suffering and mental anguish;

(g)     In addition to compensatory damages to which the Plaintiffs are entitled, the Plaintiffs are entitled to punitive damages to punish the Defendants, and to deter others from similar conduct, because the Defendants knew, or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in

the Plaintiffs being damaged, and continued such conduct with malice, or in reckless disregard of the consequences from which malice may be inferred.   Furthermore, the Defendants intentionally pursued a course of conduct for the purpose of causing the Plaintiff to incur the damages prayed for herein;

(g)      Consequential damages due to the fact that: (1) The Defendants knew that their promises would induce action or forbearance on the Plaintiffs' part; and (2) the Plaintiffs did in fact act upon the Defendants' promises to their detriment;

(h)      Attorneys' fees for having to prosecute this action;

(i)      All damages spelled out in the *Arkansas Model Jury Instructions*, or any other appropriate jury instructions; and

(j)      Should the Plaintiffs decide to pursue a class action in these proceedings, they are entitled to all damages recoverable in a class action proceedings, as per applicable law.

84.      The Plaintiffs also pray that they recover any and all damages for the causes of actions spelled out herein, and each and every *Count* spelled out herein, cumulatively.   These damages specifically include, but are not necessarily limited to, all damages statutorily defined, and those arising out of common law, for the actions of the Defendants, as spelled out herein.

85.      The Plaintiffs are unable to put a specific figure on the dollar amount to which they are entitled until after sufficient discovery has transpired, due to the fact that the predicate acts which form the basis for the Plaintiffs' cause of action are facts which are within the particular/special knowledge of the Defendants. However, the damages to which the Plaintiffs are entitled are within the jurisdictional limits of this Court, or any Court to which this matter may be transferred and/or removed.

86.   The Plaintiffs specifically reserve the right to amend this *Complaint*, at any time, and within their discretion, to appropriately modify the elements of the damages to which the Plaintiffs are entitled, and to specifically put a numerical value on each and every element of damages spelled out in the body of each *Count* of this *Complaint*, or in the *"Damages"* section to same.

87.   Pursuant to Rule 38 of the Federal *Rules of Civil Procedure*, the Plaintiff hereby demands a trial by jury on all issues so triable.

WHEREFORE, the Plaintiffs, by and through their attorneys, the Boyd Law Firm, respectfully pray that they recover the damages requested herein, as spelled out in each and every *Count* of this *Complaint*, and those listed in the *Damages* section hereinabove, whether same be statutorily defined, or arising out of common law, that said damages include actual, compensatory damages and/or punitive damages for the reasons spelled out herein, in an amount left to the sound discretion of the Jury, but in an amount to satisfy the jurisdictional limits of this Court, or any Court to which this matter may be transferred and/or removed, for their attorneys' fees and all cost herein expended, and for all other relief to which they are justifiably entitled.

Respectfully submitted,

THE BOYD LAW FIRM
P.O. Box 3494
Little Rock, Arkansas 72203-3494
(501) 372-0770
(501) 372-1807 – Facsimile

_____
Stephanie Ann Linam
Ark. Bar No. 2007-132
Charles Phillip Boyd, Jr.
Ark. Bar No. 82-023

## VERIFICATION

State of Arkansas     )
                      ) ss
County of Pulaski     )

        I, Grady Bean, do hereby swear and affirm that the facts set forth in this *Complaint* are true to the best of my knowledge and ability.

        Dated this the 10th day of December, 2013.

                                       By: _____
                                            GRADY BEAN

        SUBSCRIBED AND SWORN TO before me this 10th day of December, 2013.

                                      _____
                                     Notary Public

My Commission expires:   2-10-22



## AFFIDAVIT

Comes the undersigned, Stephanie Ann Linam, Attorney for the Plaintiffs, and does solemnly swear the following facts and information are true and correct to the best of her knowledge and belief.

1.      I have prepared and served a *Complaint* as the Attorney for the Plaintiffs in a lawsuit entitled *Bean Lumber Company, Inc. and Grady Bean v. Malteco Business Consulting Group, Inc, et al.* in the United States District Court, Eastern District of Arkansas, Western Division.

2.      I do not know the names of John Does 1-25, said designation representing the liability insurance carrier(s), if any entity raises Charitable Immunity and the evolving law mandates a direct action. As a matter of prudence, a direct action is brought against the insurance company(ies) that are the liability insurance carrier(s) for Malteco Business Consulting Group, Inc., a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, MALTEK INTERNATIONAL, SARL and/or the Gallin Group International.

3.      I do not know the names of John Does 26-50, said designation representing any and all employees, the Estate of any Defendant who predeceases service of the *Complaint*, the insurance carrier for the Defendant(s) and/or entity if a direct action is allowed, required, or proper pursuant to applicable law and/or agents acting on behalf of Malteco Business Consulting Group, Inc. a/k/a Malteco Business Consulting Group and/or Malteco Business Consulting, MALTEK INTERNATIONAL, SARL and/or the Gallin Group International who assisted and aided, contributed to and/or benefited directly, or indirectly, from the injury complained of herein.

4.      I do not know the names of John Does 51-75, said designation representing the principal of any and all of the individual Defendants, whether named specifically herein or named as a "John Does 26-50", as said entities are vicariously liable for any and all acts of negligence/fault perpetrated by their employees and/or agents.

5.      I do not know the names of John Does 76-100, said designation representing all general partners or individuals and/or entities having an interest subjecting them/it to liability as a separate judicial

entity for the acts of negligence and/or fraud alleged herein.

6.      I do not know the names of John Does 101-125, said designation representing all individuals and/or entities who aided, abetted, assisted, and/or conspired with the Defendants to engage in unconscionable, false and/or deceptive act(s) and/or practice(s) in business and harmed, defrauded and/or fraudulently induce the Plaintiffs into entering into a contract with Malteco, and/or provided promises to the Plaintiffs which caused them to delay seeking other means or avenues to prevent the injuries and/or damages they have sustained, at a time when said damages could have been alleviated and/or mitigated.

7.      Upon determining the identity of all of the individuals and/or entities generically designated herein as John Does, and all of those responsible for making false representations to the Plaintiffs in an effort to induce the Plaintiffs into entering into contracts with the named Defendants herein, those who breached any contract that resulted in injuries or damages to the Plaintiffs, those who violated the *Securities Litigation Reform Act* and the *RICO Act*, and the names of any entities immune from liability except for their liability insurance, I will timely amend the *Complaint* that has been filed, if necessary, to specifically designate the names of the individuals/entities in question, and the insurance companies to the extent required by law.

8.      This *Affidavit* is filed in accordance with Arkansas Code Annotated § 16-56-125.

_____
Stephanie Ann Linam

## VERIFICATION

SUBSCRIBED AND SWORN TO before me, a Notary Public, on this 10th day of December, 2013.

_____
NOTARY PUBLIC

My Commission Expires: 2-10-22



# MALTECO

Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

# ENGAGEMENT AGREEMENT

between

# Titan Fence & Supply Co.

and

# MALTECO

Business Consulting Group, Inc



# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

## Table of Contents

ENGAGEMENT AGREEMENT ................................................ Error! Bookmark not defined.

Parties: ............................................................................ Error! Bookmark not defined.

General: ........................................................................... Error! Bookmark not defined.

1. Services ................................................................. Error! Bookmark not defined.
2. Compensation ........................................................ Error! Bookmark not defined.
3. Termination of Agreement ...................................... Error! Bookmark not defined.
4. Notices .................................................................. Error! Bookmark not defined.
5. Attorney Fees ........................................................ Error! Bookmark not defined.
6. Time is of the Essence .......................................... Error! Bookmark not defined.
7. Inurnment ............................................................. Error! Bookmark not defined.
8. Entire Agreement .................................................. Error! Bookmark not defined.
9. Amendments ......................................................... Error! Bookmark not defined.
10. Waivers ................................................................ Error! Bookmark not defined.
11. Non-Waiver .......................................................... Error! Bookmark not defined.
12. Construction of Agreement .................................. Error! Bookmark not defined.
13. Non-Circumvention Agreement ............................ Error! Bookmark not defined.
14. Applicable Law ..................................................... Error! Bookmark not defined.
15. Counterparts ........................................................ Error! Bookmark not defined.
16. Facsimile ............................................................. Error! Bookmark not defined.
17. Acceptance of Agreement .................................... Error! Bookmark not defined.
18. Interstate Commerce ............................................ Error! Bookmark not defined.
19. Acceptable Forms of Agreement .......................... Error! Bookmark not defined.
20. Onsite Inspection requirements ........................... Error! Bookmark not defined.

SIGNATURE ..................................................................... Error! Bookmark not defined.

ADDENDUM "A" ................................................................ Error! Bookmark not defined.

Project Scope .................................................................. Error! Bookmark not defined.

ADDENDUM "B" ................................................................ Error! Bookmark not defined.

CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ............. Error! Bookmark not defined.

1.0 Definitions as used herein: ....................................... Error! Bookmark not defined.

2.0 "Party or "Parties" .................................................... Error! Bookmark not defined.

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

3.0 "Representative" ..................................................................... Error! Bookmark not defined.

4.0 Disclosure of Confidential Information ........................... Error! Bookmark not defined.

5.0 Protection of Confidential Information ........................... Error! Bookmark not defined.

6.0 Non-Circumvention ................................................................. Error! Bookmark not defined.

7.0 Entire Agreement ..................................................................... Error! Bookmark not defined.

8.0 Term and Termination of Non-Disclosure and Non-Circumvent Agreement ............ Error! Bookmark not defined.

9.0 Severability ............................................................................... Error! Bookmark not defined.

10.0 Equitable Relief ...................................................................... Error! Bookmark not defined.

11.0 Non-Assignability ................................................................. Error! Bookmark not defined.

12.0 Counterparts ........................................................................... Error! Bookmark not defined.

13.0 Agreements ............................................................................. Error! Bookmark not defined.

14.0 Waiver ...................................................................................... Error! Bookmark not defined.

15.0 Governing Law ....................................................................... Error! Bookmark not defined.

16.0 Sworn Statement ................................................................... Error! Bookmark not defined.

ADDENDUM "C" ............................................................................... Error! Bookmark not defined.

Banking Information ...................................................................... Error! Bookmark not defined.



# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

## *ENGAGEMENT AGREEMENT*

### Parties:

This Agreement made this April 6, 2010 by and between MALTECO BUSINESS CONSULTING, INC, a corporation registered in Dallas Texas, whose address is 1825 W. Walnut Hill Lane Suite 120, Irving, Texas 75038, hereinafter referred to as "MALTECO" or "Consultant" and *Titan Fence & Supply Co..*, a corporation registered in *United States of America*, its agents, successors or assigns, hereinafter referred to as "Client", whose address is *301 S. Highway 377 Crossroads, TX 76227*

Whereas Consultant is in the business of providing management consulting services to businesses in an effort to obtain capital from third parties for business use, including equipment leasing, purchase order and/or contract financing, factoring and financing for land and building utilizing various financing instruments and whereas Client desires to retain Consultant for the following purposes:

To arrange financing for the purpose of working capital as an Intermediary.

### General:

For and in consideration of mutual benefits, promises, and the cross consideration hereinafter set forth, the adequacy of which is hereby acknowledged, the parties hereto, MALTECO and *Titan Fence & Supply Co.* collectively "THE PARTIES", hereby covenant and agree as follows:

1. **Services**

A. MALTECO is hereby engaged by *Titan Fence & Supply Co.* to provide capital funding services (non-exclusive) including serving as an investment banking liaison, and acting as capital consultant for a three month period from the date hereof. MALTECO shall contact institutional investors, arrange presentation of the Company and arrange conferences with capital sources (the "term").

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

B.  MALTECO is engaged to provide capital structure, working capital, equipment financing, merger and acquisition, and reorganization consulting services to *Titan Fence & Supply Co.* for purposes of attempting to capitalize the company for a three month period from the date hereof.

2.  **Compensation**
    *Titan Fence & Supply Co.* hereby agrees to pay MALTECO for the services set forth in Paragraph 1, the following items:

    a.  *Titan Fence & Supply Co.,* shall pay MALTECO BUSINESS CONSULTING GROUP, INC. $10,000 (ten thousand USD) as cash retainer.

    b.  Recognizing that MALTECO has extensive sources of venture capital, coupled with brokerage industry contacts, *Titan Fence & Supply Co.* hereby agrees to pay MALTECO for the consulting services set forth in Paragraph 1 a success fee of FIVE percent (5%), inclusive of all fees, in cash of the amount of capital raised as a result of contacts by MALTECO. Such fees shall be due at closing of any transaction in which MALTECO has acted as the introducing person. Any party so introduced to *Titan Fence & Supply Co,* shall be pre-approved in writing by *Titan Fence & Supply Co.* and a list of introductions shall be maintained by consultant.

    *(handwritten: 2.5% cls)*

3.  **Termination of Agreement**
    A.  Upon the bankruptcy or liquidation of the other party, whether voluntary or involuntary;
    B.  Upon the other party making the benefit of any insolvency law;
    C.  Upon the other party having or applying for a receiver appointed for either party; and/or written notice by one party to the other party.

4.  **Notices**
    All notices hereunder shall be in writing and addressed to the party at the address herein set forth, or at such other address which notice pursuant to this section may be given, and shall be given upon the earlier of actual receipt or three (3) business days after being mailed or delivered to such courier service. Any notices to be given hereunder shall be effective if executed by and/or sent by the attorneys for THE PARTIES giving such notice and, in connection therewith, THE PARTIES and their respective counsel agree in giving such notice such counsel may communicate directly in writing with such party to the extent necessary to give such notice.

5.  **Attorney Fees**
    In the event either party is in default of the terms or conditions of this Engagement Agreement and legal action is initiated or suit be entered as a result of such default, the prevailing party shall be entitled to recover all costs incurred as a result of such default

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

including reasonable attorney fees, expenses and court costs through trial, appeal and to final disposition.

6. **Time is of the Essence**
   Time is hereby expressly made of the essence of this Engagement Agreement with respect to the performance by THE PARTIES of their respective obligations hereunder.

7. **Inurnment**
   This Engagement Agreement shall inure to the benefit of and be binding upon THE PARTIES hereto and their respective heirs, executors, administrators, personal representatives, successors, and consultant cannot assign this agreement.

8. **Entire Agreement**
   This Engagement Agreement contains the entire agreement of THE PARTIES. It is declared by THE PARTIES that there are no other oral or written agreements or understanding between them affecting this Agreement. This Agreement supersedes all previous agreements.

9. **Amendments**
   This Agreement may be modified or amended provided such modifications or amendments are mutually agreed upon by and between THE PARTIES hereto and that said modifications or amendments are made only by an instrument in writing signed by THE PARTIES.

10. **Waivers**
    No waiver of any provision or condition of this Agreement shall be valid unless executed in writing and signed by the party to be bound thereby, and then only to the extent specified in such waiver. No waiver of any provision or condition of this Agreement and no present waiver of any provision or condition of this Agreement shall be construed as a future waiver of such provision or condition.

11. **Non-Waiver**
    The failure of either party, at any time, to require any such performance by any other party shall not be construed as a waiver of such right to require such performance, and shall in no way affect such party's right to require such performance and shall in no way affect such party's right subsequently to require a full performance hereunder.

12. **Construction of Agreement**
    Each party and its counsel have participated fully in the review and revision of this Agreement. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

**13. Non-Circumvention Agreement**
*Titan Fence & Supply Co.* agrees, represents and warrants hereby that it shall not circumvent MALTECO with respect to any banking or lending institution, investment bank, trust, corporation, individual or investor introduced by MALTECO to *Titan Fence & Supply Co.* pursuant to the terms with MALTECO for the purpose of, without limitation, this Agreement and for a period of twelve (12) months from the date of execution by THE PARTIES of this Agreement. If *Titan Fence & Supply Co.* enters into a transaction with a party introduced by consultant, then the fees owed under Section 2a shall be due whether or not this Agreement or term has ended.

Further the Parties agree to the articles of non-disclosure outlined in the ADDENDUM "B".

**14. Applicable Law**
THIS AGREEMENT IS EXECUTED PURSUANT TO AND SHALL BE INTERPRETED AND GOVERNED FOR ALL PURPOSES BY THE LAWS OF THE STATE OF TEXAS FOR WHICH THE COURTS IN DALLAS, TEXAS SHALL HAVE JURISDICTION WITHOUT GIVING EFFECT TO THE CHOICE OR LAWS OR CONFLICT OF LAWS RULES THEREOF OR OF ANY STYLE. The parties agree that mediation shall be used as an initial forum for the good-faith attempt to settle and resolve any issues or disputes that may arise.

**15. Counterparts**
This Agreement may be executed in a number of identical counterparts. Each such counterpart is deemed an original for all purposes and all such counterparts shall, collectively, constitute one agreement, but, in making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart.

**16. Facsimile**
A facsimile copy of this Agreement is acceptable.

**17. Acceptance of Agreement**
Unless both parties have signed this Agreement within FIVE (5) business days of the date listed above, and the engagement fee has been paid, this Agreement shall be deemed automatically withdrawn and terminated.

**18. Interstate Commerce**
The Consultant shall undertake to comply at all times with Section 17-b of the Securities Act of 1933.

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

**19. Acceptable Forms of Agreement**

The Client recognizes that this is a binding contract. The contract has to be submitted in electronic form via email or fax submission. A hard copy has to be sent via overnight FEDEX to the office of Malteco Business Consulting Group, Inc.

TO:
MALTECO BUSINESS CONSULTING GROUP, INC
W. WALNUT HILL LANE, STE 120
IRVING, TEXAS 75038
UNITED STATES OF AMERICA

The Client has to submit the signed and NOTARIZED agreement to our office and can expect in between 48-72 hours the countersigned contract back.

**20. Onsite Inspection requirements**

In case an ONSITE INSPECTION is required by the lender or lending institution, the Client, *Titan Fence & Supply Co.*, has to cover the cost of the agents. The requirement of an onsite inspection of the project will be determined before any loan commitment will be given. The client has to take care of the travel and transportation arrangements (2 agents) business class or higher, rental car or limousine service) and the hotel arrangements ( at least 4-Star standard).

Per day, a fee of 1000 USD will apply per agent, and have to be paid upfront for at least 5 days.

Is an ONSITE Inspection required by the lending entity?

◯ Yes     ◉ No

# MALTECO

### Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

IN WITNESS WHEREOF, THE PARTIES have set forth their hands and seal in execution of this Engagement Agreement this April 6, 2010 by and between:

## SIGNATURE

**MALTECO BUSINESS CONSULTING GROUP, INC**

**By: Willy Andreas Kirsch, Director**

**Date:**



**Titan Fence & Supply Co**

**By: Cara Sorenson, CEO**

**Date:** C. sorensen 4/6/2010

Notarization Field:

Name: CINDY OSBORNE

Nr.: Cindy Osborne

CINDY OSBORNE
MY COMMISSION EXPIRES
October 31, 2012

(Stamp:)

Date: 4/6/10

---

9 | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK


### ADDENDUM "A"

### Project Scope

**Project Activities:** MALTECO BUSINESS CONSULTING GROUP, INC. in providing funding services, shall perform the following project specific functions and merge MALTECO efforts with *Titan Fence & Supply Co.* resources, as needed. The emphasis of this funding project shall be personal introductions of *Titan Fence & Supply Co.* to money managers, private equity fund managers, hedge fund managers, pension fund managers, financial analysts, institutional bankers, venture capitalists, investment bankers, and wholesale/retail market makers.   All out-of-pocket costs (i.e., costs for mail campaigns, printing, distributions, etc.) shall be pre-approved and paid for *Titan Fence & Supply Co.*

*Standard Activities:*

o   Conduct and implement strategic planning analysis that combines *Titan Fence & Supply Co.,* due-diligence and MALTECO in-house analysis tools to emphasize marketability.

o   Coordinate buy-side and sell-side brokerage research coverage introducing *Titan Fence & Supply Co.* to these sources and facilitating their institutional research. This provides *Titan Fence & Supply Co.* and MALTECO additional analyst reports from funding services.

o   Investment banking introductions

o   Collecting the from the client provided project related Executive Summary for mail-out / distribution, which is flexible and updated to the ongoing developments of the *Titan Fence & Supply Co*

o
o   Plan marketing campaign matching *Titan Fence & Supply Co.* to MALTECO proprietary contact base and other investment prospects / sources anchored by Internet presence

o   Target of one on one institutional investor meetings and conference calls with the most desirable in microcap, small cap and mid cap decision making analysts and portfolio managers of corporate, business and family funds

o   Corporate message refinement that is flexible according to ongoing developments

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

- o Tele-conference call, including scripting, Q&A preparation, and thorough details for successful presentation

- o Honest feedback from all meetings to allow complete knowledge of ongoing relationships and enhancements of messaging

- o Development of Analysts research coverage and comparable inclusion

- o Nurture of current and potential investors

- o Mail processing and request fulfillment

- o Investment Banking Introductions


**Project related activities and funding steps as discussed**


Please insert the specific project activities

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

### ADDENDUM "B"

### CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement is effective upon its execution from Tuesday, April 06, 2010, by and between MALTECO BUSINESS CONSULTING GROUP, INC. (the "Discloser") and **Cara Sorensen.** Passport No.      (the "Recipient"), together with their parent, subsidiaries and affiliates collectively, the "Discloser" and "Recipient" are sometimes collectively referred to as the "Parties" and individually referred to as a "Party".

WHEREAS, Discloser is revealing proprietary financial sources to assist in the procurement of Project funding through Banks, Investment Groups, Hedge Funds or Private Placement Transactions and Subsequent Transactions that the Discloser and Recipient have agreed to enter into.

WHEREAS, the relationships may be created by the Discloser's introductions may lead to the raising of funds for the Project and/or entering into a venture or entering into other similar business ventures involving the Discloser, either directly or through their third party contacts the ("Possible Transaction");

WHEREAS, Discloser desires to make available in connection with the Possible Transaction, certain information and related documentation concerning the Possible Transaction and the Business that may include without limitation details of, the Business, its organization, finance and technology, as well as details of the Possible Transaction, which the Discloser deems to be Confidential and Proprietary;

WHEREAS, the Discloser is willing to disclose such information and documentation to the Recipient on the condition that such information remain confidential pursuant to the terms and conditions of

---

| 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

this Agreement. Recipient's Information, 3rd party contacts, etc. will also remain confidential pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of their mutual promises herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1.0 Definitions as used herein:**

"Confidential Information" shall mean and include, any and all technical and non-technical information belonging to the Discloser, including but not limited to, copyright, trade secret and proprietary Information, intellectual property services, business plans, legal documents, techniques, drawings, models, know-how, processes, software, products, research and development activities, apparatus, equipment, software programs, methods, models, relating to the Possible Transaction, and the Business, and includes; without limitation, its information concerning research, development, business models, financial projections specifications, engineering, financial information, procurement requirements, business plans, management, earnings, marketing and sales, customers, suppliers marketing plans and information and all other aspects of the Business and the Possible Transaction, including, without limitation, its assets, liabilities, profitability, policies and financial position, third party contacts, sources of funding and technology partners. Confidential Information may be communicated in written, visual or oral form. Confidential Information shall include any and all other information marked or identified in writing by either Party as "Confidential" or "Proprietary Information" and provided by either Party or their respective representatives. "Confidential & Proprietary Information" shall also include all notes, analyses, compilations, studies, interpretations or other documents that are made as a part of any Party's evaluation of any other Party and based upon other Confidential Information.

Notwithstanding The Foregoing, "Confidential & Proprietary Information" shall not include:

a. Any Information known to a Party prior to disclosure of such information by the other Party or its representatives, as documented prior to such disclosure in the receiving Party's written records;

---

13 | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
## Transaction # 141-03-30-10-PF-AK

    b.  Any information which becomes available to any Party on a non-confidential basis from source other than the disclosing Party, which source is not bound by a confidentiality Agreement with, or any other contractual, legal or fiduciary obligation of confidentiality to, the disclosing Party with respect to such information;

    c.  Any information which is or becomes generally available to the public other than as a result of a disclosure by a Party in breach of this Agreement; and

    d.  Any information conceived or developed by any Party or any of its employees without access or reference, directly or indirectly, to the Confidential Information.

**2.0 "Party or "Parties"**
Any reference in this Agreement to a Party shall mean either the Discloser or Recipient, as the context so dictates and any such reference to Parties shall mean both parties hereto.

**3.0 "Representative"**
Shall mean any Agent, authorized representative, attorney, auditor or persons engaged by or on behalf of the Discloser or the Recipient.

**4.0 Disclosure of Confidential Information**
4.1 The Discloser / Recipient (a) acknowledges the confidential and proprietary nature of the Confidential Information received or to be received, (b) will keep the Confidential Information confidential, including, without limitation, by using the same degree of care (but in no event less than a reasonable degree of care) to prevent the unauthorized use, disclosure, dissemination, publication or other access to information as Discloser / Recipient uses to protect its own highly confidential information, and will not (except as required by applicable law, regulation or legal process, and only after compliance with paragraph 4.3 below), without the Discloser's prior written consent, disclose any information in any manner whatsoever, and (c) will not use any Confidential Information other than in connection with the Transaction; provided, however, that the Recipient may reveal the Confidential Information to its Representatives (i) who need to know the Confidential Information for the purpose of evaluating the Transaction, (ii) who are informed by the Recipient of the confidential nature of the Confidential Information and (iii) who agree to act in accordance with the terms of this Agreement.  The Recipient will cause its Representatives to

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

observe the terms of this Agreement, and will be responsible for any breach of this Agreement by any of its Representatives.

4.2 In addition, both Parties agree that although certain information, technology or business information may be generally known in the relevant industry, the fact that it is used by the Discloser, and how it is used by the Discloser, may not be known and therefore constitutes Confidential & Proprietary Information. Both Parties agree that the fact that various fragments of documentation, information or data may be generally known in the relevant industry does not mean that the manner in which the Discloser combines such documentation, information and data, and the results obtained as a result of such combination, are known and, therefore, such combination and results constitute Confidential & Proprietary Information.

4.3 In the event that the Recipient or any of its Representatives are requested pursuant to, or required by, applicable law, regulation or legal process to disclose any of the Confidential Information or matters contemplated by Section 4 Above, the Recipient will notify the Discloser promptly so that the Discloser may seek a protective order or other appropriate remedy or, in the Discloser's sole discretion, waive compliance with the terms of this Agreement. In the event that no such protective order or other remedy is obtained, or that the Discloser does not waive compliance with the terms of this Agreement, the Recipient will furnish only that portion of the Confidential Information which it is advised by counsel is legally required and will exercise all commercially reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Confidential Information.

5.0 Protection of Confidential Information
5.1 The Discloser & Recipient Agrees, with respect to any Confidential Information received;

(a) To examine and use the Confidential Information only in furtherance of a potential business relationship between the Parties, and not to disclose the same to any third person; and

(b) To receive and hold the Confidential Information in the strictest confidence and ensure all reasonable security precautions in the safekeeping of the Confidential Information are applied by the Recipient's employees so as to prevent disclosure of such Confidential Information to third persons. Recipient will take all reasonable necessary steps to ensure that its employees and

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

Representatives who have a need to know such information receive such Confidential Information and that its representatives, employees, agents and sub-contractors respect the obligations of non-use and non-disclosure provided herein; and

(c) Not to copy, reproduce or reduce to writing any part thereof except as may be reasonably necessary pursuant to Sub-Section 5.1a above and ensure that any copies, reproductions or reductions to writing so made shall be the property of the Discloser; and

(d) To return such Confidential Information received in any tangible form to the Discloser within five (5) days at the written request of the Discloser and to retain no copies or reproductions thereof and certify same in writing upon request of the Discloser; and

(e) To certify in writing to the Discloser that the terms of this Agreement have been complied with upon request or upon termination; and

(f) To maintain all confidential or proprietary markings placed upon or contained within the Confidential Information of the Discloser, and to refrain from removing, destroying or rendering illegible any such markings.

(g) Subsidiaries; provided, however, that the foregoing provision will not prevent the Recipient from employing any such person

(h) Who contacts the Recipient on his or her own initiative without any direct or indirect solicitation by or encouragement from the Recipient or

(i) Who is contacted by way of a generalized search for employees through the media or employment firm.

---

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

**6.0 Non-Circumvention**

The Recipient / Discloser agrees not to use any information to circumvent the other through pursuing the business opportunity alone or through third parties, or approaching the Revealed Third Party at the expense of the other party, for the purposes, intent or effect of circumventing or competing in any form, with the Discloser.

**7.0 Entire Agreement**

7.1 This Agreement contains the entire agreement between the Parties concerning the confidentiality of the Confidential Information and other matters contemplated hereby, and supersede all prior or contemporaneous oral or written understandings or agreements regarding the subject matter of this Agreement. No modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties, unless approved in writing by each of the Parties.

7.2 No rights or obligations other than those expressly recited herein are to be implied from this Agreement.

**8.0 Term and Termination of Non-Disclosure and Non-Circumvent Agreement**

8.1 This Agreement shall become effective as of the Effective Date, on the date of signature by the last of the Parties and shall remain valid for a period of five (5) years. Upon that date or as soon as practicable thereafter, each Party shall, at the other's direction, destroy or return all the Confidential Information which the other party has disclosed to it under or pursuant to this Agreement.

8.2 Restrictions with respect to the Confidential Information shall remain in force for a period of five (5) years following the date of this Agreement, notwithstanding this Agreements termination for any reason whatsoever.

---

# MALTECO

## Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK

### 9.0 Severability
If any provision of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity or unenforceability of such provision shall not affect the other provisions of this Agreement which shall remain in full force and effect.

### 10.0 Equitable Relief
10.1 Both Parties to this Agreement acknowledge that the Confidential Information belonging to the Discloser is a unique and valuable asset of Discloser. Disclosure in breach of this Agreement will result in irreparable injury to the Discloser for which monetary damages alone will not be an adequate remedy.

10.2 Therefore, the Parties agree that in the event of a breach or threatened breach of the terms of this Agreement, the Discloser will be entitled to specific performance, injunctive relief or other equitable relief prohibiting any breach of this Agreement without giving an undertaking as to damages. Any such equitable remedy shall be in addition to and not in lieu of, other appropriate relief at law to which that Discloser may be entitled.

### 11.0 Non-Assignability
No Party to this Agreement shall assign any of its rights or obligations hereunder, without the prior written consent of the other Party hereto, which consent shall not be unreasonably withheld.

### 12.0 Counterparts
This Agreement may be signed in any number of counterparts and/or via facsimile transmission with the same effect as if the signature to each were upon the same Agreement.

### 13.0 Agreements
13.1 This Agreement is neither intended to nor will it be construed as creating a Joint Venture, Partnership or other form of Business Association between the Parties or incorporating the Confidential Information.

---

18 | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

FROM :>

# MALTECO

### Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

13.2 All Confidential Information disclosed by the Discloser remains the property in right and title of the Discloser. All Confidential Information disclosed by the Recipient remains the property in right and title of the Recipient.

### 14.0 Waiver

The failure of either party to enforce any rights resulting from any breach of any term or provision of this Agreement by the other party will not be deemed a waiver of any right relating to a subsequent breach of such provision or of any other right hereunder.

### 15.0 Governing Law

The validity and interpretation of this Agreement shall be governed by the laws of TEXAS and any dispute arising thereof shall be submitted exclusively to courts in Indiana.

### 16.0 Sworn Statement

WHEREAS, I, *Cara Sorensen, CEO of Titan Fence & Supply Co,* (the "Recipient"), fully understand that the any transaction discussed will be strictly one of private placement, and that it is in no way relying upon or relating to the United States Securities Act of 1933 or related regulations, and it does not involve the sale of registered securities.

Further, I hereby declare that I, *Cara Sorensen CEO of Titan Fence & Supply Co,.* (the "Recipient"), am not a licensed broker or government employee. I (the "Recipient"), have mutually agreed that this private placement transaction is exempt from the Securities Act, and is not intended for the general public, and all matters are INFORMATE ONLY.

I, *Cara Sorensen, CEO of Titan Fence & Supply Co* as authorized signatory acting personally or on behalf of my company, do hereby confirm that I have requested of your organization to release specific confidential information and documentation on behalf of myself and or my company in order to serve my interest and purposes of helping with introductions into the financial world for private project funding by means of private placement. I hereby agree to keep all information and documents I receive from you "strictly confidential" not disclosing it to 3rd parties without consent. I hereby swear I will not try to contact or circumvent you in any way now or in the future and that I recognize your contacts as your personal property and not to be disclosed to any other parties. I hereby affirm under penalty of perjury I will not disclose any information I obtain.

I, *Cara Sorensen, CEO of Titan Fence & Supply Co.* hereby declare that the information I receive from you is in direct response to my request of your personal assistance and you or any of your associates have not solicited me for information or funds or any other type of offerings. I hereby affirm under

---

**19** | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

penalty of perjury that you have not solicited me or any of my associates in anyway. I herby affirm that I hold you harmless from any claims or liabilities and I assume full responsibility to make my own judgments based on the information provided.

I, **Cara Sorensen, CEO of Titan Fence & Supply Co.** hereby request of you to assist me with introductions regarding Project Funding, Private Placement and does no way rely or relate to "United States Securities Act" of 1933 as amended or related regulations including House Resolution HR 3720 private transaction; and does not involve the sale of securities.

Further, I declare I am not a licensed broker or a government employee I understand that you or your organization is not a licensed security broker or a licensed financial advisor. I mutually agree that if you accept and assist me with an introduction for project funding through a private placement that the transaction will be exempt from the Securities Acts and "Is Not" intended for the "General Public", and that it is strictly a private transaction I am in search of and all materials and information are strictly for "OUR PRIVATE USE ONLY"

### SIGNATURE

Malteco Business Consulting Group, Inc.                    **Titan Fence & Supply Co.**

By: Willy Andreas Kirsch, Director                          By: **Cara Sorensen, CEO**

Date:                                                        Date: C. Sorensen 4/6/2010

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-03-30-10-PF-AK

### ADDENDUM "C"

### Banking Information



| Account Info.: | |
|---|---|
| Account Name: | MALTECO BUSINESS CONSULTING GROUP, INC |
| Account Number: | 807079520 |
| IBAN/Routing: | 111000614 |
| Swift: | CHAUS3 |
| Bank name: | CHASE BANK |
| Bank address: | 5530 N McARTHUR, IRVING, TX 75038 |
| Bank Officer: | GEORGE MILLER |
| Bank Phone: | +1 (972) 717-237? |
| Bank Fax: | +1 (972) 756-6089 |
| Reference Code | 118-01-04-10-PF-NF118-01-04-10-PF-NF118-01-04-10-PF-NF118-01-04-10-PF-NF118-01-04-10-PF-NF |

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

Business Consulting Group, Inc
Transaction # 141-03-30-10-PF-AK



**This Page left Blank**

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

# ENGAGEMENT AGREEMENT

between

# LPG, Capital LLC

and

# MALTECO

Business Consulting Group, Inc



# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

## Table of Contents

ENGAGEMENT AGREEMENT ................................................................ Error! Bookmark not defined.

Parties: ................................................................................................ Error! Bookmark not defined.

General: ............................................................................................... Error! Bookmark not defined.

1. Services .................................................................................... Error! Bookmark not defined.

2. Process, Compensation and Fees for Insurance Binder/Financial Guarantee .......... Error! Bookmark not defined.

3. Termination of Agreement ........................................................ Error! Bookmark not defined.

4. Notices .................................................................................... Error! Bookmark not defined.

5. Attorney Fees ......................................................................... Error! Bookmark not defined.

6. Time is of the Essence ............................................................ Error! Bookmark not defined.

7. Inurnment ................................................................................ Error! Bookmark not defined.

8. Entire Agreement .................................................................... Error! Bookmark not defined.

9. Amendments ............................................................................ Error! Bookmark not defined.

10. Waivers .................................................................................... Error! Bookmark not defined.

11. Non-Waiver.............................................................................. Error! Bookmark not defined.

12. Construction of Agreement ...................................................... Error! Bookmark not defined.

13. Non-Circumvention Agreement ............................................... Error! Bookmark not defined.

14. Applicable Law ........................................................................ Error! Bookmark not defined.

15. Counterparts ............................................................................ Error! Bookmark not defined.

16. Facsimile .................................................................................. Error! Bookmark not defined.

17. Interstate Commerce ................................................................ Error! Bookmark not defined.

18. Acceptable Forms of Agreement.............................................. Error! Bookmark not defined.

SIGNATURE................................................................................ Error! Bookmark not defined.

ADDENDUM "A" ......................................................................... Error! Bookmark not defined.

Project Scope .................................................................................. Error! Bookmark not defined.

ADDENDUM "B".......................................................................... Error! Bookmark not defined.

CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ...................... Error! Bookmark not defined.

1.0 Definitions as used herein: ........................................................ Error! Bookmark not defined.

2.0 "Party or "Parties" ................................................................... Error! Bookmark not defined.

3.0 "Representative" ....................................................................... Error! Bookmark not defined.

2 | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

4.0  Disclosure of Confidential Information ........................................................ Error! Bookmark not defined.

5.0  Protection of Confidential Information........................................................ Error! Bookmark not defined.

6.0  Non-Circumvention ................................................................................... Error! Bookmark not defined.

7.0  Entire Agreement...................................................................................... Error! Bookmark not defined.

8.0  Term and Termination of Non-Disclosure and Non-Circumvent Agreement.............. Error! Bookmark not defined.

9.0  Severability............................................................................................. Error! Bookmark not defined.

10.0  Equitable Relief ..................................................................................... Error! Bookmark not defined.

11.0  Non-Assignability.................................................................................. Error! Bookmark not defined.

12.0  Counterparts........................................................................................... Error! Bookmark not defined.

13.0  Agreements............................................................................................ Error! Bookmark not defined.

14.0  Waiver ................................................................................................... Error! Bookmark not defined.

15.0  Governing Law ...................................................................................... Error! Bookmark not defined.

16.0  Sworn Statement.................................................................................... Error! Bookmark not defined.

ADDENDUM "C".............................................................................................. Error! Bookmark not defined.

Banking Information......................................................................................... Error! Bookmark not defined.

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

## *ENGAGEMENT AGREEMENT*

**Parties:**

This Agreement made this March 17, 2010 by and between MALTECO BUSINESS CONSULTING, INC, a corporation registered in Dallas Texas, whose address is *1825 W. Walnut Hill Lane Suite 120, Irving, Texas 75038,* hereinafter referred to as "MALTECO" or "Consultant" and *Mr. Josh Alexander, LPG Capital, LLC* hereinafter referred to as "Client", whose address is *2303 Rio Grande, Austin, TX 78705, United States of America.*

Whereas Consultant is in the business of providing management consulting services to businesses in an effort to obtain a financial guarantee (ct: insurance wrap) against presented assets for capital enhancement whereas Client desires to retain Consultant for the following purposes:

**To arrange an insurance wrap against Asset**

**General:**

For and in consideration of mutual benefits, promises, and the cross consideration hereinafter set forth, the adequacy of which is hereby acknowledged, the parties hereto, MALTECO and *Mr. Josh Alexander, LPG Capital, LLC.,*collectively "THE PARTIES", hereby covenant and agree as follows:

1. Services

A. MALTECO is hereby engaged by *Mr. Josh Alexander, LPG Capital, LLC*, to provide insurance services (exclusive) in short FINANCIAL GUARANTEE (CT: INSURANCE WRAP), bankable and assignable.
B. MALTECO shall contact institutional insurance agencies, arrange presentation of the Company and arrange conferences with the insurance agents (the "Insurance - term").
C. MALTECO is engaged to provide consulting services to *Mr. Josh Alexander, LPG Capital, LLC,* for purposes of attempting to provide, through Malteco's sources, the requested Financial Guarantee against the asset.

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

2. Process, Compensation and Fees for Insurance Binder/Financial Guarantee

*2.a.; Process*

**Mr. Josh Alexander, LPG Capital, LLC,** executes this engagement agreement and pays to Malteco the required fees of **35,000.00 USD** to bind the asset with a financial guarantee for further Credit enhancement.

To the accounts of

MALTECO BUSINESS CONSULTING GROUP, INC
W. WALNUT HILL LANE, STE 120
IRVING, TEXAS 75038
UNITED STATES OF AMERICA

| Account Info.: | |
|---|---|
| Account Name: | MALTECO BUSINESS CONSULTING GROUP, INC. |
| Account Number: | 807079520 |
| IBAN/Routing: | 111000614 |
| Swift: | CHAUS3 |
| Bank name: | CHASE BANK |
| Bank address: | 5530 N McARTHUR, IRVING, TX 75038 |
| Bank Officer: | GEORGE MILLER |
| Bank Phone: | +1 (972) 717-2375 |
| Bank Fax: | +1 (972) 756-6089 |
| Reference Code | 131-03-17-2010-FG-AK |

The Profit sharing agreement between the parties will be completed, as soon the commitment to bind the asset, is provided by the insurance agency.

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

3. **Termination of Agreement**
A. Upon the bankruptcy or liquidation of the other party, whether voluntary or involuntary;
B. Upon the other party taking the benefit of any insolvency law;
C. Upon the other party having or applying for a receiver appointed for either party; and/or written notice by one party to the other party.

4. **Notices**
All notices hereunder shall be in writing and addressed to the party at the address herein set forth, or at such other address which notice pursuant to this section may be given, and shall be given upon the earlier of actual receipt or three (3) business days after being mailed or delivered to such courier service. Any notices to be given hereunder shall be effective if executed by and/or sent by the attorneys for THE PARTIES giving such notice and, in connection therewith, THE PARTIES and their respective counsel agree in giving such notice such counsel may communicate directly in writing with such party to the extent necessary to give such notice.

5. **Attorney Fees**
In the event either party is in default of the terms or conditions of this Engagement Agreement and legal action is initiated or suit be entered as a result of such default, the prevailing party shall be entitled to recover all costs incurred as a result of such default including reasonable attorney fees, expenses and court costs through trial, appeal and to final disposition.

6. **Time is of the Essence**
Time is hereby expressly made of the essence of this Engagement Agreement with respect to the performance by THE PARTIES of their respective obligations hereunder.

7. **Inurnment**
This Engagement Agreement shall inure to the benefit of and be binding upon THE PARTIES hereto and their respective heirs, executors, administrators, personal representatives, successors, and consultant cannot assign this agreement.

8. **Entire Agreement**
This Engagement Agreement contains the entire agreement of THE PARTIES. It is declared by THE PARTIES that there are no other oral or written agreements or understanding

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

between them affecting this Agreement. This Agreement supersedes all previous agreements.

9. Amendments
This Agreement may be modified or amended provided such modifications or amendments are mutually agreed upon by and between THE PARTIES hereto and that said modifications or amendments are made only by an instrument in writing signed by THE PARTIES.

10. Waivers
No waiver of any provision or condition of this Agreement shall be valid unless executed in writing and signed by the party to be bound thereby, and then only to the extent specified in such waiver. No waiver of any provision or condition of this Agreement and no present waiver of any provision or condition of this Agreement shall be construed as a future waiver of such provision or condition.

11. Non-Waiver
The failure of either party, at any time, to require any such performance by any other party shall not be construed as a waiver of such right to require such performance, and shall in no way affect such party's right to require such performance and shall in no way affect such party's right subsequently to require a full performance hereunder.

12. Construction of Agreement
Each party and its counsel have participated fully in the review and revision of this Agreement. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

13. Non-Circumvention Agreement
*Mr. Josh Alexander, LPG Capital, LLC*, agrees, represents and warrants hereby that it shall not circumvent MALTECO with respect to any banking or lending institution, insurance, investment bank, trust, corporation, individual or investor introduced by MALTECO to *Mr. Josh Alexander, LPG Capital, LLC*, pursuant to the terms with MALTECO for the purpose of, without limitation, this Agreement and for a period of twelve (12) months from the date of execution by THE PARTIES of this Agreement. If *Mr. Josh Alexander, LPG Capital, LLC*, enters into a transaction with a party introduced by consultant, then the fees owed under section 2a shall be due whether or not this Agreement or term has ended.

Further the Parties agree to the articles of non-disclosure outlined in the ADDENDUM "B".

14. Applicable Law
THIS AGREEMENT IS EXECUTED PURSUANT TO AND SHALL BE INTERPRETED AND GOVERNED FOR ALL PURPOSES BY THE LAWS OF THE STATE OF TEXAS FOR WHICH THE COURTS IN

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

DALLAS, TEXAS SHALL HAVE JURISDICTION WITHOUT GIVING EFFECT TO THE CHOICE OR LAWS OR CONFLICT OF LAWS RULES THEREOF OR OF ANY STYLE. The parties agree that mediation shall be used as an initial forum for the good-faith attempt to settle and resolve any issues or disputes that may arise.

15. Counterparts
This Agreement may be executed in a number of identical counterparts. Each such counterpart is deemed an original for all purposes and all such counterparts shall, collectively, constitute one agreement, but, in making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart.

16. Facsimile
A facsimile copy of this Agreement is acceptable.

17. Interstate Commerce
The Consultant shall undertake to comply at all times with Section 17-b of the Securities Act of 1933.

18. Acceptable Forms of Agreement
The Client recognizes that this is a binding contract. The contract has to be submitted in electronic form via email or fax submission. A hard copy has to be sent via overnight FEDEX to the office of Malteco Business Consulting Group, Inc.


TO:
MALTECO BUSINESS CONSULTING GROUP, INC
W. WALNUT HILL LANE, STE 120
IRVING, TEXAS 75038
UNITED STATES OF AMERICA

The Client has to submit the signed and NOTARIZED agreement to our office and can expect in between 48-72 hours the countersigned contract back.

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

IN WITNESS WHEREOF, THE PARTIES have set forth their hands and seal in execution of this Engagement Agreement this March 17, 2010 by and between:

SIGNATURE

**MALTECO BUSINESS CONSULTING GROUP, INC**          **COMPANYNAME**

**By: Willy Andreas Kirsch, Director**          **By:** *Mr. Josh Alexander, LPG Capital, LLC*

**Date: Wednesday, March 17, 2010**          **Date: Wednesday, March 17, 2010**

Notarization Field:

Name:................................................................................

Nr.:..................................................................................

(Stamp:)

Date:................................................................................

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562 admin@malteco.com

# MALTECO

Business Consulting Group, Inc

Transaction # 131-03-17-2010-FG-AK

ADDENDUM "A"

Project Scope

**Project Activities:** MALTECO BUSINESS CONSULTING GROUP, INC., in providing insurance services, shall perform the following project specific functions and merge MALTECO efforts with *Mr. Josh Alexander, LPG Capital, LLC* resources, as needed.  The emphasis of this insurance project shall be personal introductions of *Mr. Josh Alexander, LPG Capital, LLC* to insurance agents and companies providing such requested services.

This service includes but is not limited to:

Presenting the necessary documentation as provided by the client to the insurance agency/

If additional documentation is required, it is the client's responsibility to provide those.

If the client requires additional assistance with providing such documentation, Malteco will assist and charge for the additional service as agreed in writing before additional services will be provided.

All funds, to cover the binding fees have to be wired to the accounts of Malteco Business Consulting Group, Inc. prior the insurance binder will be presented.

Malteco Business Consulting Group guarantees for the safekeeping and security of the funds with their financial liability insurance up to 5 Million USD.

As soon the insurance binder is presented to the client, the client has to cover the insurance costs in 30 working days.

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

ADDENDUM "B"

CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement is effective upon its execution from Wednesday, March 17, 2010, by and between MALTECO BUSINESS CONSULTING GROUP, INC. (the "Discloser") and **Mr. Josh Alexander, LPG Capital, LLC**, (the "Recipient"), together with their parent, subsidiaries and affiliates collectively, the "Discloser" and "Recipient" are sometimes collectively referred to as the "Parties" and individually referred to as a "Party".

WHEREAS, Discloser is revealing proprietary financial sources to assist in the procurement of Insurance Services through affiliated insurance agencies that the Discloser will introduce to the Recipient .

WHEREAS,  the relationships may be created by the Discloser's introductions may lead to the raising of funds for the Project and/or entering into a venture or entering into other similar business ventures involving the Discloser, either directly or through their third party contacts the ("Possible Transaction");

WHEREAS, Discloser desires to make available in connection with the Possible Transaction, certain information and related documentation concerning the Possible Transaction and the Business that may include without limitation, details of, the Business, its organization, finance  and technology, as well as details of the Possible Transaction, which the Discloser  deems  to be Confidential and Proprietary;

WHEREAS, the Discloser is willing to disclose such information and documentation to the Recipient on the condition that such information remain confidential pursuant to the terms and conditions of

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

this Agreement. Recipient's information, 3rd party contacts, etc. will also remain confidential pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of their mutual promises herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.0 Definitions as used herein:

"Confidential Information" shall mean and include, any and all technical and non-technical information belonging to the Discloser, including but not limited to, copyright, trade secret and proprietary information, intellectual property services, business plans, legal documents, techniques, drawings, models, know-how, processes, software, products, research and development activities, apparatus, equipment, software programs, methods, models, relating to the Possible Transaction, and the Business, and includes, without limitation, its information concerning research, development, business models, financial projections specifications, engineering, financial information, procurement requirements, business plans, management, earnings, marketing and sales, customers, suppliers marketing plans and information and all other aspects of the Business and the Possible Transaction, including, without limitation, its assets, liabilities, profitability, policies and financial position, third party contacts, sources of funding and technology partners. Confidential Information may be communicated in written, visual or oral form. Confidential Information shall include any and all other information marked or identified in writing by either Party as "Confidential" or "Proprietary Information" and provided by either Party or their respective representatives. "Confidential & Proprietary Information" shall also include all notes, analyses, compilations, studies, interpretations or other documents that are made as a part of any Party's evaluation of any other Party and based upon other Confidential Information.

Notwithstanding The Foregoing, "Confidential & Proprietary Information" shall not include:

a. Any information known to a Party prior to disclosure of such information by the other Party or its representatives, as documented prior to such disclosure in the receiving Party's written records;

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

b. Any information which becomes available to any Party on a non-confidential basis from source other than the disclosing Party, which source is not bound by a confidentiality Agreement with, or any other contractual, legal or fiduciary obligation of confidentiality to, the disclosing Party with respect to such information;

c. Any information which is or becomes generally available to the public other than as a result of a disclosure by a Party in breach of this Agreement; and

d. Any information conceived or developed by any Party or any of its employees without access or reference, directly or indirectly, to the Confidential Information.

2.0 "Party or "Parties"
Any reference in this Agreement to a Party shall mean either the Discloser or Recipient, as the context so dictates and any such reference to Parties shall mean both parties hereto.

3.0 "Representative"
Shall mean any Agent, authorized representative, attorney, auditor or persons engaged by or on behalf of the Discloser or the Recipient.

4.0 Disclosure of Confidential Information
4.1 The Discloser / Recipient (a) acknowledges the confidential and proprietary nature of the Confidential Information received or to be received, (b) will keep the Confidential Information confidential, including, without limitation, by using the same degree of care (but in no event less than a reasonable degree of care) to prevent the unauthorized use, disclosure, dissemination, publication or other access to information as Discloser / Recipient uses to protect its own highly confidential information, and will not (except as required by applicable law, regulation or legal process, and only after compliance with paragraph 4.3 below), without the Discloser's prior written consent, disclose any Information in any manner whatsoever, and (c) will not use any Confidential Information other than in connection with the Transaction; provided, however, that the Recipient may reveal the Confidential Information to its Representatives (i) who need to know the Confidential Information for the purpose of evaluating the Transaction, (ii) who are informed by the Recipient of the confidential nature of the Confidential Information and (iii) who agree to act in accordance with the terms of this Agreement. The Recipient will cause its Representatives to

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

observe the terms of this Agreement, and will be responsible for any breach of this Agreement by any of its Representatives.

4.2 In addition, both Parties agree that although certain information, technology or business information may be generally known in the relevant industry, the fact that it is used by the Discloser, and how it is used by the Discloser, may not be known and therefore constitutes Confidential & Proprietary Information. Both Parties agree that the fact that various fragments of documentation, information or data may be generally known in the relevant industry does not mean that the manner in which the Discloser combines such documentation, information and data, and the results obtained as a result of such combination, are known and, therefore, such combination and results constitute Confidential & Proprietary Information.

4.3 In the event that the Recipient or any of its Representatives are requested pursuant to, or required by, applicable law, regulation or legal process to disclose any of the Confidential Information or matters contemplated by Section 1. Above, the Recipient will notify the Discloser promptly so that the Discloser may seek a protective order or other appropriate remedy or, in the Discloser's sole discretion, waive compliance with the terms of this Agreement.  In the event that no such protective order or other remedy is obtained, or that the Discloser does not waive compliance with the terms of this Agreement, the Recipient will furnish only that portion of the Confidential Information which it is advised by counsel is legally required and will exercise all commercially reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Confidential Information.

5.0  Protection of Confidential Information
5.1 The Discloser / Recipient Agrees, with respect to any Confidential Information received;

(a) To examine and use such Confidential Information only in furtherance of a potential business relationship between the Parties, and not to disclose the same to any third person; and

(b) To receive and hold the Confidential Information in the strictest confidence and ensure all reasonable security precautions in the safekeeping of the Confidential Information are applied by the Recipient's employees so as to prevent disclosure of such Confidential Information to third persons. Recipient will take all reasonable necessary steps to ensure that its employees and

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

Representatives who have a need to know such information receive such Confidential Information and that its representatives, employees, agents and sub-contractors respect the obligations of non-use and non-disclosure provided herein; and

(c) Not to copy, reproduce or reduce to writing any part thereof except as may be reasonably necessary pursuant to Sub-Section 5.1a above and ensure that any copies, reproductions or reductions to writing so made shall be the property of the Discloser; and

(d) To return such Confidential Information received in any tangible form to the Discloser within five (5) days at the written request of the Discloser and to retain no copies or reproductions thereof and certify same in writing upon request of the Discloser; and

(e) To certify in writing to the Discloser that the terms of this Agreement have been complied with upon request or upon termination; and

(f) To maintain all confidential or proprietary markings placed upon or contained within the Confidential Information of the Discloser, and to refrain from removing, destroying or rendering illegible any such markings.

(g) Subsidiaries; provided, however, that the foregoing provision will not prevent the Recipient from employing any such person

(h) Who contacts the Recipient on his or her own initiative without any direct or indirect solicitation by or encouragement from the Recipient or

(i) Who is contacted by way of a generalized search for employees through the media or employment firm.

### Non-Circumvention
The Recipient / Discloser agrees not to use any Information to circumvent the other through pursuing the business opportunity alone or through third parties, or approaching the Revealed Third Party at the expense of the other party, for the purposes, intent or effect of circumventing or competing in any form, with the Discloser.

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

### 7.0 Entire Agreement

7.1 This Agreement contains the entire agreement between the Parties concerning the confidentiality of the Confidential Information and other matters contemplated hereby, and supersede all prior or contemporaneous oral or written understandings or agreements regarding the subject matter of this Agreement. No modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties, unless approved in writing by each of the Parties.

7.2 No rights or obligations other than those expressly recited herein are to be implied from this Agreement.

### 8.0 Term and Termination of Non-Disclosure and Non-Circumvent Agreement

8.1 This Agreement shall become effective as of the Effective Date, on the date of signature by the last of the Parties and shall remain valid for a period of five (5) years. Upon that date or as soon as practicable thereafter, each Party shall, at the other's direction, destroy or return all the Confidential Information which the other party has disclosed to it under or pursuant to this Agreement.

8.2 Restrictions with respect to the Confidential Information shall remain in force for a period of five (5) years following the date of this Agreement, notwithstanding this Agreements termination for any reason whatsoever.

### 9.0 Severability

If any provision of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity or unenforceability of such provision shall not affect the other provisions of this Agreement which shall remain in full force and effect.

### 10.0 Equitable Relief

10.1 Both Parties to this Agreement acknowledge that the Confidential Information belonging to the Discloser is a unique and valuable asset of Discloser. Disclosure in breach of this Agreement will result in irreparable injury to the Discloser for which monetary damages alone will not be an adequate remedy.

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

10.2 Therefore, the Parties agree that in the event of a breach or threatened breach of the terms of this Agreement, the Discloser will be entitled to specific performance, injunctive relief or other equitable relief prohibiting any breach of this Agreement without giving an undertaking as to damages. Any such equitable remedy shall be in addition to and not in lieu of, other appropriate relief at law to which that Discloser may be entitled.

11.0 Non-Assignability

No Party to this Agreement shall assign any of its rights or obligations hereunder, without the prior written consent of the other Party hereto, which consent shall not be unreasonably withheld.

12.0 Counterparts

This Agreement may be signed in any number of counterparts and/or via facsimile transmission with the same effect as if the signature to each were upon the same Agreement.

13.0 Agreements

13.1 This Agreement is neither intended to nor will it be construed as creating a Joint Venture, Partnership or other form of Business Association between the Parties or Incorporating the Confidential Information.

13.2 All Confidential Information disclosed by the Discloser remains the property in right and title of the Discloser. All Confidential Information disclosed by the Recipient remains the property in right and title of the Recipient.

14.0 Waiver

The failure of either party to enforce any rights resulting from any breach of any term or provision of this Agreement by the other party will not be deemed a waiver of any right relating to a subsequent breach of such provision or of any other right hereunder.

15.0 Governing Law

The validity and interpretation of this Agreement shall be governed by the laws of TEXAS and any dispute arising thereof shall be submitted exclusively to courts in Indiana.

16.0 Sworn Statement

WHEREAS, I, *Mr. Josh Alexander, LPG Capital, LLC*, (the "Recipient"), fully understand that the any transaction discussed will be strictly one of private placement, and that it is in no way relying upon

---

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

or relating to the United States Securities Act of 1933 or related regulations, and it does not involve the sale of registered securities.

Further, I hereby declare that I *Mr. Josh Alexander, LPG Capital, LLC*, (the "Recipient"), am not a licensed broker or government employee. I (the "Recipient"), have mutually agreed that this private placement transaction is exempt from the Securities Act, and is not intended for the general public, and all matters are for PRIVATE USE ONLY.

I, *Mr. Josh Alexander, LPG Capital, LLC.*,as authorized signatory acting personally or on behalf of my company, do hereby confirm that I have requested of your organization to release specific confidential information and documentation on behalf of myself and or my company in order to serve my interest and purposes of helping with introductions into the financial world for private project funding by means of private placement. I hereby agree to keep all information and documents I receive from you "strictly confidential" not disclosing it to 3rd parties without consent. I hereby swear I will not try to contact or circumvent you in any way now or in the future and that I recognize your contacts as your personal property and not to be disclosed to any other parties.  I hereby affirm under penalty of perjury I will not disclose any information I obtain.

I, *Mr. Josh Alexander, LPG Capital, LLC,*hereby declare that the information I receive from you is in direct response to my request of your personal assistance and you or any of your associates have not solicited me for information or funds or any other type of offerings. I hereby affirm under penalty of perjury that you have not solicited me or any of my associates in anyway. I herby affirm that I hold you harmless from any claims or liabilities and I assume full responsibility to make my own judgments based on the information provided.

I, *Mr. Josh Alexander, LPG Capital, LLC,*hereby request of you to assist me with introductions regarding Insurance Services, Project Funding, Private Placement and does no way rely or relate to "United States Securities Act" of 1933 as amended or related regulations including House Resolution HR 3720 private transaction; and does not involve the sale of securities.

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

## Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

Further, I declare I am not a licensed broker or a government employee I understand that you or your organization is not a licensed security broker or a licensed financial advisor. I mutually agree that if you accept and assist me with an introduction for project funding through a private placement that the transaction will be exempt from the Securities Acts and "Is Not" intended for the "General Public", and that it is strictly a private transaction I am in search of and all materials and information are strictly for "OUR PRIVATE USE ONLY".

**SIGNATURE**


Malteco Business Consulting Group, Inc.            *Mr. Josh Alexander, LPG Capital, LLC*


By: Willy Andreas Kirsch, Director                By: *Mr. Josh Alexander, LPG Capital, LLC*

Date: Wednesday, March 17, 2010             Date: Wednesday, March 17, 2010

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

### ADDENDUM "C"

### Banking Information

**TOTAL AMOUNT TO BE WIRED**          **35,000.00 USD**

| Account Info.: | |
|---|---|
| Account Name: | MALTECO BUSINESS CONSULTING GROUP, INC. |
| Account Number: | 807079520 |
| IBAN/Routing: | 111000614 |
| Swift: | CHAUS3 |
| Bank name: | CHASE BANK |
| Bank address: | 5530 N McARTHUR, IRVING, TX 75038 |
| Bank Officer: | GEORGE MILLER |
| Bank Phone: | +1 (972) 717-2375 |
| Bank Fax: | +1 (972) 756-6089 |
| Reference Code | 131-03-17-2010-FG-AK |

1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

Business Consulting Group, Inc
Transaction # 131-03-17-2010-FG-AK

**This Page left Blank**

# MALTECO

Business Consulting Group, Inc

## IRREVOCABLE MASTER FEE PROTECTION AGREEMENT

### "CONSIDERED AS AN INTEGRAL PART OF THIS CONTRACT"

| CONTRACT NO | Transaction # 131-03-17-2010-FG-AK |
|---|---|
| COMMODITY | 20 M USD GOLD DUST |
| CONTRACT QTY | 25 M USD PAID OUT OVER |
| TERM | 40 WEEKS |
| PRINCIPAL'S NAME | LPG CAPITAL LLC |
| REPRESENTED BY | JOSHUA D.  ALEXANDER |

**We the undersigned** herewith referred as the Principal, under penalty of perjury do hereby irrevocably confirm and irrevocably accept to pay all intermediaries and fee holders at the same time and in a manner as the Principal is being paid for each and every transaction of this contract up to the completion of the contract plus rollovers and extensions and in accordance with the bank details to be specified in the hard copies of this contract.

**We, the Facilitator,** irrevocably confirm that we will order and direct our bank to endorse automatic payment orders to the beneficiaries named below; furthermore, we, the Facilitator, confirm that all pay orders shall automatically transfer funds as directed into each beneficiaries designated bank account within **3 (three) days after** the receipt if wire transfer from the Facilitator plus any extensions or rollovers of the specified contract

1 | 1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com



# MALTECO

## Business Consulting Group, Inc

For the purpose of clarity, we confirm that the closing and completion of each and every shipment shall be deemed to take place when the wire transfer issued by the buyer has been cleared by the receiving bank.

**We, the Facilitator,** agrees to provide all beneficiaries with written evidence of the pay orders lodged with our bank together with acknowledgements of their acceptance.

**Furthermore,** our bank shall be instructed to provide duly signed and stamped acknowledgement of this instruction as set out in the annex. As part of this Agreement, it is understood that for the purposes of this Master Fee Protection Agreement, our bank shall be the same bank and this MFPA acts as an integral part of it.

**We the undersigned** being the Principal named legally authorized representative as stated within the signed and legally binding main transaction, contract unconditionally agree and undertake to approve and originate all payments in **USD currency** to all beneficiaries named below as their rightful and payable commissions. This agreement also acts as a record confirming the commission amounts for each named beneficiary as set out below:

# MALTECO

Business Consulting Group, Inc

TERMS & CONDITIONS

## PAYMASTER PRINCIPAL SIDE INFO

TOTAL AMOUNT: 100% FROM CLIENT SIDE - $ 25 MILLION USD

| | |
|---|---|
| Paymaster Name | BILLY PARLIN |
| Paymaster Address | 2112 BIENVILLE BOULEVARD, SUITE J, OCEAN SPRINGS, MS 39566-0577 |
| Passport No. | 400896092/USA/EXP 4-28-2012 |
| Bank Name | CHASE BANK |
| Bank Address | 5530 N MCARTHUR IRVING, TX 75038 |
| Account No. | 807079520 |
| Swift Code | CHAS US 33 |
| ABA | 111000614 |
| Bank Officer | GEORGE MILLER |
| Bank Telephone /Fax | 972-717-2375/972-756-6089 |
| Beneficiary Name | Principal |
| Special Wire Instructions | PRE ADVISE OF WIRING |

: ALL BANK CHARGES SHOULD BE BORNE BY ACCOUNT BENEFICIARY

# MALTECO

Business Consulting Group, Inc

### PRINCIPAL

TOTAL AMOUNT:  $ 20 MILLION USD IN 40 PAYMENTS OF $ 0.5 MILLION USD

| | |
|---|---|
| Paymaster Name | Joshua D. Alexander |
| Paymaster Address | 2303 Rio Grande, Austin, TX 78705 |
| Passport No. | 458897645 |
| Bank Name | Wells Fargo Bank |
| Bank Address | 111 Congress Avenue, Austin, TX 78701 |
| Account No. | 6145539323 |
| Swift Code | WFBIUS6S |
| ABA | 121000248 |
| Bank Officer | Wells Fargo Bank San Francisco |
| Bank Telephone /Fax | 01 512 344 7141 |
| Beneficiary Name | LPG Capital LLC |
| Special Wire Instructions | PRE ADVISE OF WIRING |
| Required Message | |

# MALTECO

## Business Consulting Group, Inc

---

**: ALL BANK CHARGES SHOULD BE BORNE BY ACCOUNT BENEFICIARY**

---

## FACILITATOR GROUP #1

**TOTAL AMOUNT: - $ 5 MILLION USD IN 40 PAYMENTS OF $ 125,000.00 K**

| | |
|---|---|
| Paymaster Name | WILLY ANDREAS KIRSCH |
| Paymaster Address | 1825 W WALNUT HILL LN SUITE 120 IRVING, TX 75038 |
| Passport No. | C4FWPJ2T9/GERMANY/EXP 08-26-2019 |
| Bank Name | CHASE BANK |
| Bank Address | 5530 N MACARTHUR BLVD, IRVING, TX 75038 |
| Account No. | 807079520 |
| Swift Code | CHAS US 33 |
| ABA | 111000614 |
| Bank Officer | GEORGE MILLER |
| Bank Telephone /Fax | 972-717-2375/972-756-6089 |
| Beneficiary Name | MALTECO BUSINESS CONSULTING GROUP, INC |
| Special Wire Instructions | PRE ADVISE OF WIRING |
| Required Message | |

---

**: ALL BANK CHARGES SHOULD BE BORNE BY ACCOUNT BENEFICIARY**

---

5  1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

# MALTECO

Business Consulting Group, Inc

**NOTARY PUBLIC**

ON THIS _____ DAY _____, 2010

Signature: _____

Mr. Andy Kirsch   Date: 03-17-10

Signature: _____

Mr. Joshua D. Alexander   Date:03-17-10

Malteco Business Consulting Group, Inc

BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, PERSONALLY APPEARED ......................................., TO ME KNOWN
TO BE THE INDIVIDUAL DESCRIBED IN AND WHO EXECUTED THE FOREGOING INSTRUMENT, AND ACKNOWLEDGED
HAT HE EXECUTED THE SAME AS HIS FREE ACT AND DEED

_____

NOTARY PUBLIC

SEAL:

# MALTECO

Business Consulting Group, Inc

## THIS PAGE IS LEFT BLANK

# MALTECO

### Business Consulting Group, Inc
### Transaction # 141-05-24-10-PF-AK

2010-05-26

Mr. Grady Bean CEO
Bean Lumber Company, Inc.
Hwy. 8 Spur N
Glenwood, AR. 71943

Dear Mr. Grady Bean:

Please be advised that Malteco Business Consulting Group, Inc., its affiliates and/or assigns ("Investor") is interested in providing an investment (the "Investment") in the form of Series A Preferred Stock in the captioned Property. This term sheet outlines the general terms and conditions under which Investor intends to proceed. This term sheet does not constitute a commitment to invest, either expressed or implied, on behalf of Investor.

**Investor:** Malteco Business Consulting Group, Inc., its affiliates and/or assigns.

**Funding:** Malteck International SARL "a Swiss Corporation" assigned by Malteco Business Consulting Group, Inc.

**Property ID:** 301 S. Highway 377 Crossroads, TX  76227

**Applicant:** Bean Lumber Co., Inc. ("Owner/CEO") Grady Bean

**Guarantor(s): Bean Lumber Company, Inc, Grady Bean**

**Please note:** Property ownership entity must be a single asset, bankruptcy remote entity acceptable to Investor.

**Project Details:** Refinancing the existing facility/buildings and retirement of specified liens associated w Bean Lumber Company and investment in said entity located at Highway 8 Spur N Glenwood, Arkansas 71943

**Investment Amount: $ 10,000,000 (10 Million USD)**

**Owner Equity:** Owner shall maintain in the project at the initial close all cash equity paid in to date and may not take-out cash equity from the proceeds of the Investment other than specified in "Uses of Funds" below. Investor may reimburse the owner for equity monies expended subsequent to the execution of this Term Sheet and prior to closing.



# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-05-24-10-PF-AK

**Loan Request Summary:**

Investment Amount: $10,000,000 (Ten Million USD)

Investment Purpose: Investment/Refinance

| | | |
|---|---|---|
| **Orderly Liquidation Value CBRE:** | $ 7,810,850 | (Seven point Eight Million USD) |
| **Orderly Liquidation Value in Place CBRE:** | $25,530,875 | (Twenty Five point Five million USD) |
| **As Completed Value: Orderly Liquidation:** | $13,783,850 | (Thirteen point Seven Million USD) |
| Orderly Liquidation Value in Place: | $ 31,503,875 | (Thirty One point Five Million USD) |

**Appraised Value CBRE:** $5,660,000 (Five Million Six Hundred Sixty Thousand USD)
**Existing Liens/Liabilities:** $8,593,420 (Eight Million Five Hundred Ninety Three Thousand Four Hundred and Twenty USD)
**Occupancy rate is 100%**

**Depository Fee:** Bean Lumber Company, Inc. ("Owner") Grady Bean , will deposit an engagement fee of One Hundred Twenty Five Thousand ($125,000.00) with Malteco Business Consulting Group, Inc., on the presentment of a term sheet. Upon execution of a term sheet, from Malteco Business Consulting Group, Inc. and/or its assigns, the consulting fee earned and payable and will be deducted from total funds due at closing. Initial Depository/Binder Fee will be scheduled out per agreement with Malteco Consulting Group the initial payment will be $ 60,000.00 (Sixty Thousand USD) and subsequent payments of $16,250.00 (Sixteen Thousand Two Hundred and Fifty USD). The schedule will be Bi-Weekly for 4 periods beginning on the initial Transfer of Funds date. Bean Lumber Company, Inc. and "Owner/CEO" Grady Bean accept these terms and agree that any remaining amount due will be deducted from Funding amount should funding occur before Depository/Binder agreement is fulfilled. This fee is non-refundable on execution of said Term Sheet.

**Draw Schedule:** The Investment Amount will be funded per the owner's draw schedule (as approved by Investor) with individual draws of $ 1,000,000.00 ( One million USD) initial and 18 payments of $500,000 (Five hundred thousand). Initial funding will be as specified in "Uses of Funds" below.

# MALTECO

Business Consulting Group, Inc
Transaction # 141-05-24-10-PF-AK

The investment is active in the first tranche and will be  paid back within 2 years and 2 days from the first tranche date.  Investor agrees to extend additional 5 or 7 years at the end of said period upon agreement of terms and conditions of Malteco Business Consulting Group, Inc and its affiliates and/or assignees and Bean Lumber Company, Inc and Grady Bean, "CEO/Owner".

**Interest Rate:** 5.5%

**Interest Rate Extension: Market Rate Based on Libor (London Interbank Offered Rate).**

**Use of Funds:** (a) Refinance Subject Property (b) Infrastructure Improvements and Site Development; and (c) balance to be used for payment of closing expenses.

**Common Stock:** At Closing Investor will receive 25% equity interest in the project in the form of 25% of the voting shares of the Common Stock of the single asset entity owner. Malteco Business Consulting will allow a provision whereby "Owner/CEO" Grady Bean and other "Owner Entities" will be in co-ownership of the 25% and retain voting rights. Investor will retain co-owned shares and forgoes voting rights.  Bean Lumber Company, Inc. ("Owner/CEO") Grady Bean and/or their successors/assigns will remain the Owner(s) of 75% (in total) of the Common Stock of the Company.  Investor will granted participation in dividends from profits during the period of Investment at of 8 %.  If the company is not profitable dividend is not applicable.  Common shares co-owned are released back to Bean Lumber Company,Inc. and, Grady Bean "CEO/Owner", when financial instrument has been satisfied.

**Release of Investor Shares:** Upon successful repayment of Investment to the Investor the 25% Co-owned shares between Malteco Business Consulting and its affiliates and or assignees and Bean Lumber Com[any Inc. and Grady Bean "CEO/Owner" will be released back to original shareholder without encumbrance.

**Security:** No additional financing (debt or equity) is permitted during the term of the investment, either secured or unsecured, except with the permission of the Investor.

**Origination Fee:** 2.0 %

**Expenses:** The present owners will be responsible for the timely payment of all closing expenses. Upon request, the present owners agree to immediately reimburse Investor for all costs, including but not limited to Third Party Reports and Investor Legal Fees.  Investor requirement on these expenses shall not exceed $ 1500 (One Thousand Five Hundred USD).

# MALTECO

## Business Consulting Group, Inc
### Transaction # 141-05-24-10-PF-AK

**Miscellaneous Conditions:** The pricing and terms of the Investment is subject to the following conditions.

1. Full review by investor of project plans, project documentation and owner/guarantor financials and capability.

2. Full due diligence including property site inspection.

3. Zoning confirmation letters.

4. Investor counsel satisfactory review of title.

5. Investor's satisfactory review of principals' financials and credit history.

6. Verification that construction permits can be issued and that all engineering, architectural plans, etc. are in process.

7. Investor's appraisal will report a value as represented in documents provided to date. Verification that the land was purchased (date and purchase price) and verification of Majority Owner's cash invested to date.

8. All leases, reports, financials pertaining to Bean Lumber Company, Inc..


This information is needed but not limited to:


**Third Party Reports:**

The present owners shall provide Investor (but Investor shall order), at the present owners' sole cost and expense, prior to the closing of this transaction, in form and substance satisfactory to Investor, in its sole discretion, the following:

**Environmental Phase One:** a Phase I (and subsequent reports if required by Investor) acceptable to Investor by an environmental consultant retained by Investor at majority Owner's expense. Investor may, in its sole discretion, accept a previously prepared report when accompanied by a reliance letter. Based on the findings of such report, Investor may require a Phase Two report requiring testing, remediation, environmental insurance, or Investor may deny the investment.

---

# MALTECO

Business Consulting Group, Inc
Transaction # 141-05-24-10-PF-AK

**Due Diligence**: Investor's obligations hereunder are contingent on Investor completing, to its sole and absolute satisfaction, a complete review of the Owner's and Sponsors' financials (personal and corporate), credit reports, the Property and the surrounding market. Criminal and civil searches will be performed on the sponsors, guarantors, Owner, and Owner's sub-entities and/or parents. At any time, Investor may elect in its sole and absolute discretion to terminate this agreement.

**Other Conditions**: In addition to completion of Investor's Due Diligence as outlined above, Investor's obligations hereunder are contingent on satisfactory completion, in Investor's sole and absolute discretion;(i) site inspection, (ii) title review, (iii) survey review, (iv) lease(s) review, (v) insurance review and underwriting, (vi) review of applicant background and credit, (vii) any other reasonable information necessary for Investor to perform due diligence in efforts to make the proposed Investment, (viii) the Majority Owner's execution of investment documents, and (ix) Owner's acting in good faith and with commercially reasonable efforts to comply with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Owner and the property, including those relating to money laundering and terrorism. Investor shall have the right to audit the Owner's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Owner and the property, including those relating to money laundering and terrorism and (x) review of the existing first mortgage documentation. If the Owner does not promptly (within 14 days) provide information necessary for underwriting the Investor may terminate this agreement and keep any deposits as liquidated damages. The Owner will be required to provide quarterly books and records for the subject Property.  The Owner shall be responsible to pay all attorney's fees and costs incurred by Investor due to any dispute that arises in connection with this Agreement.

**Expiration**: This term sheet will expire if not executed and returned to Investor prior to end of business May 28, 2010. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of or that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto. A facsimile copy of the agreement shall be considered an original.

# MALTECO

Business Consulting Group, Inc
Transaction # 141-05-24-10-PF-AK

Your signatures below authorize Investor to order full and complete credit reports and background checks in efforts to verify credit and background history and to gather whatever financial information is considered necessary for consideration of this investment. Upon Owner agreement to the terms and conditions contained herein, please sign this term sheet below.

Please do not hesitate to contact us if you have any questions on terms, conditions, format or procedure regarding this term sheet letter.

# MALTECO

## Business Consulting Group, Inc
## Transaction # 141-05-24-10-PF-AK

IN WITNESS WHEREOF, the parties have executed this Agreement and acknowledge that said Agreement shall be governed by all applicable Laws.

_(signature)_

Andy Kirsch
President
Malteco Business Consulting Group, Inc.

Date: _2010_

Accepted and Approved by:

Bean Lumber Company, Inc ("CEO/Owner") Grady Bean

_(signature)_

Principal's Name

Date: 5/28/10

V—Pres.

Principal's Title

_(signature)_ Deshe Ledbetter 5/28/10

Notary Seal Date

Deshe Ledbetter
County Of Pike
Notary Public - Arkansas
My Commission Exp. 10/24/2011

# MALTECO

Business Consulting Group, Inc
Transaction # 141-05-24-10-PF-AK

## This Page Left Blank

# MALTECO

Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

# ENGAGEMENT AGREEMENT

Between

Bean Lumber Company, Inc. and "Owner/CEO" Grady Bean
And

# MALTECO

Business Consulting Group, Inc



# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

## Table of Contents

ENGAGEMENT AGREEMENT ................................................................. 1

Parties: .................................................................................................. 4

General: ................................................................................................. 4

  1.   Services ......................................................................................... 4

  2.   Process, Compensation and Fees for Insurance Binder/Financial Guarantee ............................ 4

  3.   Termination of Agreement .......................................................... 7

  4.   Notices ......................................................................................... 7

  5.   Attorney Fees .............................................................................. 7

  6.   Time is of the Essence ................................................................ 7

  7.   Inurnment ................................................................................... 7

  8.   Entire Agreement ................................................................... 7,8

  9.   Amendments ............................................................................... 8

  10.  Waivers ....................................................................................... 8

  11.  Non-Waiver ................................................................................ 8

  12.  Construction of Agreement ........................................................ 8

  13.  Non-Circumvention Agreement ............................................. 8,9

  14.  Applicable Law ........................................................................... 9

  15.  Counterparts ............................................................................... 9

  16.  Facsimile .................................................................................... 9

  17.  Interstate Commerce .................................................................. 9

  18.  Acceptable Forms of Agreement ............................................... 9

SIGNATURE ......................................................................................... 10

ADDENDUM "A" .................................................................................. 11

Project Scope ....................................................................................... 11

ADDENDUM "B" .................................................................................. 12

CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT .................. 13

  1.0 Definitions as used herein: .......................................................... 13

  2.0 "Party or "Parties" .................................................................... 14

  3.0 "Representative" ........................................................................ 14

  4.0 Disclosure of Confidential Information ................................. 14,15

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

5.0  Protection of Confidential Information............................................................................15

6.0  Non-Circumvention........................................................................................................16

7.0  Entire Agreement...........................................................................................................17

8.0  Term and Termination of Non-Disclosure and Non-Circumvent Agreement..................17

9.0  Severability....................................................................................................................17

10.0  Equitable Relief ..........................................................................................................17

11.0  Non-Assignability........................................................................................................18

12.0  Counterparts...............................................................................................................18

13.0  Agreements.................................................................................................................18

14.0  Waiver.........................................................................................................................18

15.0  Governing Law............................................................................................................18

16.0  Sworn Statement..............................................................................................18,19,20

ADDENDUM "C"..................................................................................................................21

Banking Information.............................................................................................................22

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

## *ENGAGEMENT AGREEMENT*

**Parties:**

This Agreement made this May 27, 2010 by and between MALTECO BUSINESS CONSULTING, INC, a corporation registered in Dallas Texas, whose address is *1825 W. Walnut Hill Lane Suite 120, Irving, Texas 75038,* hereinafter referred to as "MALTECO" or "Consultant" and Bean Lumber Company, Inc. and Grady Bean hereinafter referred to as "Client", whose address is Hwy.8 Spur N Glenwood, AR. 71943 , *United States of America.*

Whereas Consultant is in the business of providing management consulting services to businesses in an effort to obtain a financial guarantee (ct: insurance wrap) against presented assets for capital enhancement whereas Client desires to retain Consultant for the following purposes:

**To arrange an insurance wrap against Asset**

**General:**

For and in consideration of mutual benefits, promises, and the cross consideration hereinafter set forth, the adequacy of which is hereby acknowledged, the parties hereto, MALTECO and *Bean Lumber Company, Inc. and Grady Bean*, collectively "THE PARTIES", hereby covenant and agree as follows:

1. **Services**

A. MALTECO is hereby engaged by **Bean Lumber Company, Inc. and Grady Bean**, to provide insurance services (exclusive) in short FINANCIAL GUARANTEE (CT: INSURANCE WRAP), bankable and assignable.

B. MALTECO shall contact institutional insurance agencies, arrange presentation of the Company and arrange conferences with the insurance agents (the "Insurance - term").

C. MALTECO is engaged to provide consulting services to, **Bean Lumber Company, Inc. and Grady Bean** for purposes of attempting to provide, through Malteco's sources, the requested Financial Guarantee against the asset.

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

2.   Process, Compensation and Fees for Insurance Binder/Financial Guarantee

*2.a.) Process*

**Bean Lumber Company, Inc. and Grady Bean** , executes this engagement agreement and pays to Malteco the required fees of **$125,000.00 USD** to bind the asset with a financial guarantee for further Credit enhancement.  The initial payment is for **$ 60,000.00 USD** with an agreed upon term of **$16,500.00 USD** Bi-weekly installments until Binder is fulfilled.

To the accounts of

MALTECO BUSINESS CONSULTING GROUP, INC
W. WALNUT HILL LANE, STE 120
IRVING, TEXAS 75038
UNITED STATES OF AMERICA

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Account Info.: | |
| Account Name: | MALTECO BUSINESS CONSULTING GROUP, INC. |
| Account Number: | 2000052237735 |
| IBAN/Routing: | 111025013 |
| Swift: | PNBPUS3NNYC |
| Bank name: | WACHOVIA BANK |
| Bank address: | 4040 N McARTHUR BLVD SUITE 200, IRVING, TX 75038 |
| Bank Officer: | W. CHRIS HOWARD |
| Bank Phone: | +1 (972) 717-9217 |
| Bank Fax: | +1 (972) 791-0741 |

# MALTECO

Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

| Reference Code | 148-04-19-2010-FG-NA |
|---|---|

The Profit sharing agreement between the parties will be completed, as soon the commitment to bind the asset, is provided by the insurance agency.

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

3. **Termination of Agreement**
A. Upon the bankruptcy or liquidation of the other party, whether voluntary or involuntary;
B. Upon the other party taking the benefit of any insolvency law;
C. Upon the other party having or applying for a receiver appointed for either party; and/or written notice by one party to the other party.

4. **Notices**
All notices hereunder shall be in writing and addressed to the party at the address herein set forth, or at such other address which notice pursuant to this section may be given, and shall be given upon the earlier of actual receipt or three (3) business days after being mailed or delivered to such courier service.  Any notices to be given hereunder shall be effective if executed by and/or sent by the attorneys for THE PARTIES giving such notice and, in connection therewith, THE PARTIES and their respective counsel agree in giving such notice such counsel may communicate directly in writing with such party to the extent necessary to give such notice.

5. **Attorney Fees**
In the event either party is in default of the terms or conditions of this Engagement Agreement and legal action is initiated or suit be entered as a result of such default, the prevailing party shall be entitled to recover all costs incurred as a result of such default including reasonable attorney fees, expenses and court costs through trial, appeal and to final disposition.

6. **Time is of the Essence**
Time is hereby expressly made of the essence of this Engagement Agreement with respect to the performance by THE PARTIES of their respective obligations hereunder.

7. **Inurnment**
This Engagement Agreement shall inure to the benefit of and be binding upon THE PARTIES hereto and their respective heirs, executors, administrators, personal representatives, successors, and consultant cannot assign this agreement.

8. **Entire Agreement**
This Engagement Agreement contains the entire agreement of THE PARTIES.  It is declared by THE PARTIES that there are no other oral or written agreements or understanding

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

between them affecting this Agreement.   This Agreement supersedes all previous agreements.

9. **Amendments**
This Agreement may be modified or amended provided such modifications or amendments are mutually agreed upon by and between THE PARTIES hereto and that said only an instrument in writing signed by THE PARTIES makes modifications or amendments.

10. **Waivers**
No waiver of any provision or condition of this Agreement shall be valid unless executed in writing and signed by the party to be bound thereby, and then only to the extent specified in such waiver.   No waiver of any provision or condition of this Agreement and no present waiver of any provision or condition of this Agreement shall be construed as a future waiver of such provision or condition.

11. **Non-Waiver**
The failure of either party, at any time, to require any such performance by any other party shall not be construed as a waiver of such right to require such performance, and shall in no way affect such party's right to require such performance and shall in no way affect such party's right subsequently to require a full performance hereunder.

12. **Construction of Agreement**
Each party and its counsel have participated fully in the review and revision of this Agreement.   Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

13. **Non-Circumvention Agreement**
**_Bean Lumber Company, Inc. and Grady Bean_**, agrees, represents and warrants hereby that it shall not circumvent MALTECO with respect to any banking or lending institution, insurance, investment bank, trust, corporation, individual or investor introduced by MALTECO to **_Bean Lumber Company and Grady Bean_** , pursuant to the terms with MALTECO for the purpose of, without limitation, this Agreement and for a period of twelve (12) months from the date of execution by THE PARTIES of this Agreement.  If and **Bean Lumber Company, Inc. and Grady Bean** , enters into a transaction with a party introduced by consultant, then the fees owed under section 2a shall be due whether or not this Agreement or term has ended.

Further the Parties agree to the articles of non-disclosure outlined in the ADDENDUM "B".

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

14. **Applicable Law**

THIS AGREEMENT IS EXECUTED PURSUANT TO AND SHALL BE INTERPRETED AND GOVERNED FOR ALL PURPOSES BY THE LAWS OF THE STATE OF TEXAS FOR WHICH THE COURTS IN DALLAS, TEXAS SHALL HAVE JURISDICTION WITHOUT GIVING EFFECT TO THE CHOICE OR LAWS OR CONFLICT OF LAWS RULES THEREOF OR OF ANY STYLE.  The parties agree that mediation shall be used as an initial forum for the good-faith attempt to settle and resolve any issues or disputes that may arise.

15. **Counterparts**

This Agreement may be executed in a number of identical counterparts.  Each such counterpart is deemed an original for all purposes and all such counterparts shall, collectively, constitute one agreement, but, in making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart.

16. **Facsimile**

A facsimile copy of this Agreement is acceptable.

17. **Interstate Commerce**

The Consultant shall undertake to comply at all times with Section 17-b of the Securities Act of 1933.

18. **Acceptable Forms of Agreement**

The Client recognizes that this is a binding contract. The contract has to be submitted in electronic form via email or fax submission. A hard copy has to be sent via overnight FEDEX to the office of Malteco Business Consulting Group, Inc.


TO:
MALTECO BUSINESS CONSULTING GROUP, INC
W. WALNUT HILL LANE, STE 120
IRVING, TEXAS 75038
UNITED STATES OF AMERICA

The Client has to submit the signed and NOTARIZED agreement to our office and can expect in between 48-72 hours the countersigned contract back.

# MALTECO
## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

IN WITNESS WHEREOF, THE PARTIES have set forth their hands and seal in execution of this Engagement Agreement this May 27, 2010 by and between:

SIGNATURE

**MALTECO BUSINESS CONSULTING GROUP, INC**        _____

                                                                By: _____

**By: Willy Andreas Kirsch, Director**              Date: Thursday, May 27, 2010

**Date: Thursday, May 27, 2010**

Notarization Field:

Name:.......................................................................

Nr.:...........................................................................

(Stamp:)

Date:.........................................................................

# MALTECO
## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

### ADDENDUM "A"

### Project Scope

**Project Activities:**  MALTECO BUSINESS CONSULTING GROUP, INC., in providing insurance services, shall perform the following project specific functions and merge MALTECO efforts with **Bean Lumber Company, Inc. Bean and Grady** , resources, as needed.

This service includes but is not limited to:

Presenting the necessary documentation as provided by the client to the insurance agency/

If additional documentation is required, it is the client's responsibility to provide those.

If the client requires additional assistance with providing such documentation, Malteco will assist and charge for the additional service as agreed in writing before additional services will be provided.

All funds, to cover the binding fees have to be wired to the accounts of Malteco Business Consulting Group, Inc. before the insurance binder will be presented.

Malteco Business Consulting Group guarantees for the safekeeping and security of the funds with their financial liability insurance up to 5 Million USD.

Upon payment of the Depository/Binder payment of $ 125,000 (One hundred Twenty Five Thousand USD) Binder Fee for the insurance will be considered paid in full.  Any additional payments required for binder will be covered by Malteco Consulting, and its affiliates and or/assignees.

# MALTECO
## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

### ADDENDUM "B"

### CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement is effective upon its execution from Thursday, May 27, 2010, by and between MALTECO BUSINESS CONSULTING GROUP, INC. (the "Discloser") and **Bean Lumber Company, Inc. and Grady Bean** (the "Recipient"), together with their parent, subsidiaries and affiliates collectively, the "Discloser" and "Recipient" are sometimes collectively referred to as the "Parties" and individually referred to as a "Party".

WHEREAS, Discloser is revealing proprietary financial sources to assist in the procurement of Insurance Services through affiliated insurance agencies that the Discloser will introduce to the Recipient.

WHEREAS,  the relationships may be created by the Discloser's introductions may lead to the raising of funds for the Project and/or entering into a venture or entering into other similar business ventures involving the Discloser, either directly or through their third party contacts the ("Possible Transaction");

WHEREAS, Discloser desires to make available in connection with the Possible Transaction, certain information and related documentation concerning the Possible Transaction and the Business that may include without limitation, details of, the Business, its organization, finance  and technology, as well as details of the Possible Transaction, which the Discloser  deems  to be Confidential and Proprietary;

WHEREAS, the Discloser is willing to disclose such information and documentation to the Recipient on the condition that such information remain confidential pursuant to the terms and conditions of

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

this Agreement. Recipient's information, 3rd party contacts, etc. will also remain confidential pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of their mutual promises herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.0 Definitions as used herein:
"Confidential Information" shall mean and include, any and all technical and non-technical information belonging to the Discloser, including but not limited to, copyright, trade secret and proprietary information, intellectual property services, business plans, legal documents, techniques, drawings, models, know-how, processes, software, products, research and development activities, apparatus, equipment, software programs, methods, models, relating to the Possible Transaction, and the Business, and includes, without limitation, its information concerning research, development, business models, financial projections specifications, engineering, financial information, procurement requirements, business plans, management, earnings, marketing and sales, customers, suppliers marketing plans and information and all other aspects of the Business and the Possible Transaction, including, without limitation, its assets, liabilities, profitability, policies and financial position, third party contacts, sources of funding and technology partners. Confidential Information may be communicated in written, visual or oral form. Confidential Information shall include any and all other information marked or identified in writing by either Party as "Confidential" or "Proprietary Information" and provided by either Party or their respective representatives. "Confidential & Proprietary Information" shall also include all notes, analyses, compilations, studies, interpretations or other documents that are made as a part of any Party's evaluation of any other Party and based upon other Confidential Information.

Notwithstanding The Foregoing, "Confidential & Proprietary Information" shall not include:

    a. Any information known to a Party prior to disclosure of such information by the other Party or its representatives, as documented prior to such disclosure in the receiving Party's written records;

---

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

    b.  Any information which becomes available to any Party on a non-confidential basis from source other than the disclosing Party, which source is not bound by a confidentiality Agreement with, or any other contractual, legal or fiduciary obligation of confidentiality to, the disclosing Party with respect to such information;

    c.  Any information which is or becomes generally available to the public other than as a result of a disclosure by a Party in breach of this Agreement; and

    d.  Any information conceived or developed by any Party or any of its employees without access or reference, directly or indirectly, to the Confidential Information.

**2.0 "Party or "Parties"**
Any reference in this Agreement to a Party shall mean either the Discloser or Recipient, as the context so dictates and any such reference to Parties shall mean both parties hereto.

**3.0 "Representative"**
Shall mean any Agent, authorized representative, attorney, auditor or persons engaged by or on behalf of the Discloser or the Recipient.

**4.0 Disclosure of Confidential Information**
4.1 The Discloser / Recipient (a) acknowledges the confidential and proprietary nature of the Confidential Information received or to be received, (b) will keep the Confidential Information confidential, including, without limitation, by using the same degree of care (but in no event less than a reasonable degree of care) to prevent the unauthorized use, disclosure, dissemination, publication or other access to information as Discloser / Recipient uses to protect its own highly confidential information, and will not (except as required by applicable law, regulation or legal process, and only after compliance with paragraph 4.3 below), without the Discloser's prior written consent, disclose any Information in any manner whatsoever, and (c) will not use any Confidential Information other than in connection with the Transaction; provided, however, that the Recipient may reveal the Confidential Information to its Representatives (i) who need to know the Confidential Information for the purpose of evaluating the Transaction, (ii) who are informed by the Recipient of the confidential nature of the Confidential Information and (iii) who agree to act in accordance with the terms of this Agreement.  The Recipient will cause its Representatives to

---

# MALTECO
## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

observe the terms of this Agreement, and will be responsible for any breach of this Agreement by any of its Representatives.

4.2 In addition, both Parties agree that although certain information, technology or business information may be generally known in the relevant industry, the fact that it is used by the Discloser, and how it is used by the Discloser, may not be known and therefore constitutes Confidential & Proprietary Information. Both Parties agree that the fact that various fragments of documentation, information or data may be generally known in the relevant industry does not mean that the manner in which the Discloser combines such documentation, information and data, and the results obtained as a result of such combination, are known and, therefore, such combination and results constitute Confidential & Proprietary Information.

4.3 In the event that the Recipient or any of its Representatives are requested pursuant to, or required by, applicable law, regulation or legal process to disclose any of the Confidential Information or matters contemplated by Section 1. Above, the Recipient will notify the Discloser promptly so that the Discloser may seek a protective order or other appropriate remedy or, in the Discloser's sole discretion, waive compliance with the terms of this Agreement. In the event that no such protective order or other remedy is obtained, or that the Discloser does not waive compliance with the terms of this Agreement, the Recipient will furnish only that portion of the Confidential Information which it is advised by counsel is legally required and will exercise all commercially reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Confidential Information.

5.0 Protection of Confidential Information
5.1 The Discloser / Recipient Agrees, with respect to any Confidential Information received;

(a) To examine and use such Confidential Information only in furtherance of a potential business relationship between the Parties, and not to disclose the same to any third person; and

(b) To receive and hold the Confidential Information in the strictest confidence and ensure all reasonable security precautions in the safekeeping of the Confidential Information are applied by the Recipient's employees so as to prevent disclosure of such Confidential Information to third persons. Recipient will take all reasonable necessary steps to ensure that its employees and

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

Representatives who have a need to know such information receive such Confidential Information and that its representatives, employees, agents and sub-contractors respect the obligations of non-use and non-disclosure provided herein; and

(c) Not to copy, reproduce or reduce to writing any part thereof except as may be reasonably necessary pursuant to Sub-Section 5.1a above and ensure that any copies, reproductions or reductions to writing so made shall be the property of the Discloser; and

(d) To return such Confidential Information received in any tangible form to the Discloser within five (5) days at the written request of the Discloser and to retain no copies or reproductions thereof and certify same in writing upon request of the Discloser; and

(e) To certify in writing to the Discloser that the terms of this Agreement have been complied with upon request or upon termination; and

(f) To maintain all confidential or proprietary markings placed upon or contained within the Confidential Information of the Discloser, and to refrain from removing, destroying or rendering illegible any such markings.

(g) Subsidiaries; provided, however, that the foregoing provision will not prevent the Recipient from employing any such person

(h) Who contacts the Recipient on his or her own initiative without any direct or indirect solicitation by or encouragement from the Recipient or

(i) Who is contacted by way of a generalized search for employees through the media or employment firm.

6.0 Non-Circumvention

The Recipient / Discloser agrees not to use any Information to circumvent the other through pursuing the business opportunity alone or through third parties, or approaching the Revealed Third Party at the expense of the other party, for the purposes, intent or effect of circumventing or competing in any form, with the Discloser.

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

**7.0 Entire Agreement**

7.1 This Agreement contains the entire agreement between the Parties concerning the confidentiality of the Confidential Information and other matters contemplated hereby, and supersede all prior or contemporaneous oral or written understandings or agreements regarding the subject matter of this Agreement. No modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties, unless approved in writing by each of the Parties.

7.2 No rights or obligations other than those expressly recited herein are to be implied from this Agreement.

**8.0 Term and Termination of Non-Disclosure and Non-Circumvent Agreement**

8.1 This Agreement shall become effective as of the Effective Date, on the date of signature by the last of the Parties and shall remain valid for a period of five (5) years. Upon that date or as soon as practicable thereafter, each Party shall, at the other's direction, destroy or return all the Confidential Information which the other party has disclosed to it under or pursuant to this Agreement.

8.2 Restrictions with respect to the Confidential Information shall remain in force for a period of five (5) years following the date of this Agreement, notwithstanding this Agreements termination for any reason whatsoever.

**9.0 Severability**

If any provision of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity or unenforceability of such provision shall not affect the other provisions of this Agreement which shall remain in full force and effect.

**10.0 Equitable Relief**

10.1 Both Parties to this Agreement acknowledge that the Confidential Information belonging to the Discloser is a unique and valuable asset of Discloser. Disclosure in breach of this Agreement will result in irreparable injury to the Discloser for which monetary damages alone will not be an adequate remedy.

---

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

10.2 Therefore, the Parties agree that in the event of a breach or threatened breach of the terms of this Agreement, the Discloser will be entitled to specific performance, injunctive relief or other equitable relief prohibiting any breach of this Agreement without giving an undertaking as to damages. Any such equitable remedy shall be in addition to and not in lieu of, other appropriate relief at law to which that Discloser may be entitled.

### 11.0 Non-Assignability
No Party to this Agreement shall assign any of its rights or obligations hereunder, without the prior written consent of the other Party hereto, which consent shall not be unreasonably withheld.

### 12.0 Counterparts
This Agreement may be signed in any number of counterparts and/or via facsimile transmission with the same effect as if the signature to each were upon the same Agreement.

### 13.0 Agreements
13.1 This Agreement is neither intended to nor will it be construed as creating a Joint Venture, Partnership or other form of Business Association between the Parties or Incorporating the Confidential Information.

13.2 All Confidential Information disclosed by the Discloser remains the property in right and title of the Discloser. All Confidential Information disclosed by the Recipient remains the property in right and title of the Recipient.

### 14.0 Waiver
The failure of either party to enforce any rights resulting from any breach of any term or provision of this Agreement by the other party will not be deemed a waiver of any right relating to a subsequent breach of such provision or of any other right hereunder.

### 15.0 Governing Law
The validity and interpretation of this Agreement shall be governed by the laws of TEXAS and any dispute arising thereof shall be submitted exclusively to courts in Indiana.

### 16.0 Sworn Statement
WHEREAS, I, **Bean Lumber Company, Inc. and Grady Bean** (the "Recipient"), fully understand that the any transaction discussed will be strictly one of private placement, and that it is in no way

---

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

relying upon or relating to the United States Securities Act of 1933 or related regulations, and it does not involve the sale of registered securities.

Further, I hereby declare that I, and **Bean Lumber Company, Inc. and Grady Bean** (the "Recipient"), am not a licensed broker or government employee. I (the "Recipient"), have mutually agreed that this private placement transaction is exempt from the Securities Act, and is not intended for the general public, and all matters are for PRIVATE USE ONLY.

I, and **Bean Lumber Company, Inc. and Grady Bean** ,as authorized signatory acting personally or on behalf of my company, do hereby confirm that I have requested of your organization to release specific confidential information and documentation on behalf of myself and or my company in order to serve my interest and purposes of helping with introductions into the financial world for private project funding by means of private placement. I hereby agree to keep all information and documents I receive from you "strictly confidential" not disclosing it to 3rd parties without consent. I hereby swear I will not try to contact or circumvent you in any way now or in the future and that I recognize your contacts as your personal property and not to be disclosed to any other parties.  I hereby affirm under penalty of perjury I will not disclose any information I obtain.

I, and **Bean Lumber Company, Inc. and Grady Bean** , hereby declare that the information I receive from you is in direct response to my request of your personal assistance and you or any of your associates have not solicited me for information or funds or any other type of offerings. I hereby affirm under penalty of perjury that you have not solicited me or any of my associates in anyway. I herby affirm that I hold you harmless from any claims or liabilities and I assume full responsibility to make my own judgments based on the information provided.

I,  and **Bean Lumber Company, Inc. and Grady Bean** and hereby request of you to assist me with introductions regarding Insurance Services, Project Funding, Private Placement and does no way rely or relate to "United States Securities Act" of 1933 as amended or related regulations including House Resolution HR 3720 private transaction; and does not involve the sale of securities.

# MALTECO
## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

Further, I declare I am not a licensed broker or a government employee I understand that you or your organization is not a licensed security broker or a licensed financial advisor. I mutually agree that if you accept and assist me with an introduction for project funding through a private placement that the transaction will be exempt from the Securities Acts and "Is Not" intended for the "General Public", and that it is strictly a private transaction I am in search of and all materials and information are strictly for "OUR PRIVATE USE ONLY".

**SIGNATURE**

Malteco Business Consulting Group, Inc.           **Bean Lumber Company, Inc. and Grady Bean**

_____ –           _____

By: Willy Andreas Kirsch, Director           By: Grady Bean "CEO and Owner"

Date: Thursday, May 27, 2010           Date: _____

# MALTECO

## Business Consulting Group, Inc
Transaction # 127-05-24-2010-FG-AK

### ADDENDUM "C"

### Banking Information

**TOTAL AMOUNT TO BE WIRED**          $125,000.00 USD

| Account Info.: | |
|---|---|
| Account Name: | MALTECO BUSINESS CONSULTING GROUP, INC. |
| Account Number: | 2000052237735 |
| IBAN/Routing: | 111025013 |
| Swift: | PNBPUS3NNYC |
| Bank name: | WACHOVIA BANK |
| Bank address: | 4040 N McARTHUR BLVD SUITE 200, IRVING, TX 75038 |
| Bank Officer: | W. CHRIS HOWARD |
| Bank Phone: | +1 (972) 717-9217 |
| Bank Fax: | +1 (972) 791-0741 |
| Reference Code | 148-04-19-2010-FG-NA |

# MALTECO

Business Consulting Group, Inc

Transaction # 127-05-24-2010-FG-AK

# MALTECO

## Business Consulting Group, Inc

Transaction # 127-05-24-2010-FG-AK

Further, I declare I am not a licensed broker or a government employee I understand that you or your organization is not a licensed security broker or a licensed financial advisor. I mutually agree that if you accept and assist me with an introduction for project funding through a private placement that the transaction will be exempt from the Securities Acts and "Is Not" intended for the "General Public", and that it is strictly a private transaction I am in search of and all materials and information are strictly for "OUR PRIVATE USE ONLY".

SIGNATURE

Malteco Business Consulting Group, Inc.

By: Willy Andreas Kirsch, Director

Date: Thursday, May 27, 2010

**Bean Lumber Company, Inc. and Grady Bean**

By: Grady Bean "CEO and Owner"

Date: 5/27/2010

20   1825 W. Walnut Hill Lane Suite 120 Irving, Texas 75038 972-331-2557 fax 972-331-2562
admin@malteco.com

104002944

Jun 30, 2010

Pg   5 of   7

Bean Lumber Co., Inc.

------- Checks listed in numerical order;  (*) indicates gap in sequence -------

| Check | Date | Amount | Check | Date | Amount |
|---|---|---|---|---|---|
| 10658 | 06/24 | 26,232.00 | 10678 | 06/28 | 51,861.45 |
| 10659 | 06/24 | 895.56 | 10679 | 06/28 | 23,196.53 |
| 10661* | 06/24 | 527.40 | 10680 | 06/29 | 2,000.00 |
| 10662 | 06/28 | 7,000.00 | 10681 | 06/28 | 3,726.24 |
| 10664* | 06/25 | 1,146.05 | 10682 | 06/28 | 456.16 |
| 10665 | 06/28 | 141.05 | 10688* | 06/29 | 8,968.96 |
| 10667* | 06/28 | 10,000.00 | 10689 | 06/29 | 45,075.00 |
| 10670* | 06/29 | 2,076.64 | 10691* | 06/30 | 46,917.25 |
| 10671 | 06/29 | 78,808.33 | 10692 | 06/29 | 10,010.00 |
| 10674* | 06/30 | 79,247.12 | 10693 | 06/29 | 200.00 |
| 10675 | 06/30 | 63,140.40 | 10694 | 06/30 | 88.24 |
| 10676 | 06/28 | 747.67 | 10697* | 06/30 | 2,695.21 |
| 10677 | 06/29 | 94.50 | 10698 | 06/30 | 1,884.21 |

----------------------------- Other Debits -----------------------------
| | | | |
|---|---|---|---|
| 06/01/2010 | ACH Payment | | 4,983.22 |
| | LEASING SERVICES  PHONE PYMT | | |
| 06/02/2010 | Transfer Withdrawal | W/T TO MALTECO BUSINESS | 60,000.00 |
| 06/02/2010 | Transfer Charge | W/T FEE | 15.00 |
| 06/08/2010 | Overdraft Charge | | 75.00 |
| | Item(s) Presented 06/07/2010 | | |
| 06/11/2010 | ACH Payment | BCIC  ach | 33,499.96 |
| 06/15/2010 | Overdraft Charge | | 25.00 |
| | Item(s) Presented 06/14/2010 | | |
| 06/16/2010 | Overdraft Charge | | 125.00 |
| | Item(s) Presented 06/15/2010 | | |
| 06/16/2010 | Return Check Chrg | | 25.00 |
| | Item(s) Presented 06/15/2010 | | |
| 06/17/2010 | Transfer Withdrawal | | 13,005.00 |
| 06/17/2010 | Overdraft Charge | | 25.00 |
| | Item(s) Presented 06/16/2010 | | |
| 06/18/2010 | Overdraft Charge | | 100.00 |
| | Item(s) Presented 06/17/2010 | | |
| 06/21/2010 | Transfer Withdrawal | | 5,000.00 |
| 06/21/2010 | Transfer Withdrawal | | 16,500.00 |
| | W/T BEAN LUMBER TO MALTECO | | |

104002944

Jun 30, 2010

Pg   6 of   7

Bean Lumber Co., Inc.

| | | |
|---|---|---|
| 06/21/2010 Transfer Charge | | 15.00 |
| W/T BEAN LUMBER TO MALTECO FEE | | |
| 06/22/2010 Overdraft Charge | | 100.00 |
| Item(s) Presented 06/21/2010 | | |
| 06/23/2010 Transfer Withdrawal | | 54,692.05 |
| 06/23/2010 Transfer Withdrawal | | 84,730.03 |
| 06/23/2010 Overdraft Charge | | 25.00 |
| Item(s) Presented 06/22/2010 | | |
| 06/23/2010 Return Check Chrg | | 75.00 |
| Item(s) Presented 06/22/2010 | | |
| 06/24/2010 ACH Payment | | 39.99 |
| AMERICAN EXPRESS  ELEC REMIT | | |
| 06/24/2010 ACH Payment | GARNISHMENT FEE | 100.00 |
| 06/24/2010 ACH Payment | GARNISHMENT BEAN LUMBER | 10,590.21 |
| 06/24/2010 Overdraft Charge | | 50.00 |
| Item(s) Presented 06/23/2010 | | |
| 06/25/2010 Overdraft Charge | | 150.00 |
| Item(s) Presented 06/24/2010 | | |
| 06/28/2010 Return Check Chrg | | 50.00 |
| Item(s) Presented 06/25/2010 | | |
| 06/29/2010 Overdraft Charge | | 25.00 |
| Item(s) Presented 06/28/2010 | | |
| 06/30/2010 ACH Payment | BCIC  ach | 26,360.60 |
| 06/30/2010 Overdraft Charge | | 150.00 |
| Item(s) Presented 06/29/2010 | | |
| 06/30/2010 Service Charge | | 0.96 |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | 850.00 | 1,050.00 |
| Total Return Item Fees | 150.00 | 300.00 |

------------------------ Daily Ending Balance ------------------------

| | | | | | |
|---|---|---|---|---|---|
| 06/01 | 50,864.08 | 06/03 | 101,854.60 | 06/07 | 161,019.01- |
| 06/02 | 72,703.10 | 06/04 | 268,173.24 | 06/08 | 49,087.15 |

104002944

Jul 31, 2010

Pg   5 of   8

Bean Lumber Co., Inc.

```
------- Checks listed in numerical order;  (*) indicates gap in sequence -------
      Check   Date         Amount           Check   Date          Amount
-----------------------------------    ---------------------------------
    10860   07/21          397.10         10888   07/26        2,685.20
    10862*  07/22       20,000.00         10889   07/26        2,846.84
    10863   07/22        2,323.73         10890   07/26        9,439.75
    10864   07/23        1,064.20         10891   07/26        1,993.97
    10865   07/26          675.54         10893*  07/27       25,729.44
    10866   07/23        5,725.70         10895*  07/27        4,803.06
    10867   07/29          317.31         10896   07/27        9,439.75
    10868   07/22       24,245.82         10897   07/27       41,012.78
    10869   07/28          380.72         10901*  07/29          763.00
    10871*  07/23        1,227.81         10902   07/29        1,284.54
    10873*  07/26        3,986.40         10904*  07/28          201.27
    10875*  07/30       62,069.58         10906*  07/28        1,864.21
    10876   07/30       62,898.75         10908*  07/29        2,821.96
    10878*  07/27       63,080.00         10909   07/30        2,907.84
    10879   07/28       62,641.12         10910   07/30          375.84
    10880   07/28       52,845.12         10911   07/29        6,984.00
    10881   07/29       53,412.48         10912   07/29        9,363.77
    10882   07/23          323.11         10916*  07/30          126.96
    10883   07/29          342.86         10917   07/29       22,786.64
    10885*  07/26        1,062.49         10920*  07/30           95.78
    10886   07/26       46,625.81         10922*  07/30           38.45
    10887   07/27        2,000.00
```

```
------------------------------- Other Debits -------------------------------
07/01/2010 Transfer Withdrawal                              63,145.40
07/01/2010 Stop Pmt Charge       Stop Payment Charge            25.00
07/01/2010 Stop Pmt Charge       Stop Payment Charge            25.00
07/01/2010 Return Check Chrg                                    75.00
           Item(s) Presented 06/30/2010
07/02/2010 Overdraft Charge                                     50.00
           Item(s) Presented 07/01/2010
07/02/2010 Return Check Chrg                                    25.00
           Item(s) Presented 07/01/2010
07/06/2010 Transfer Withdrawal                              16,500.00
           W/T TO MALTECO BUS CONSULTIN GROUP
```

104002944

Jul 31, 2010

Pg   6 of   8

Bean Lumber Co., Inc.

```
07/06/2010 Return Check Chrg                                    25.00
           Item(s) Presented 07/02/2010
07/06/2010 Transfer Charge                                      15.00
           W/T TO MALTECO BUS CONSULTIN GROUP-FEE
07/07/2010 Transfer Withdrawal                              79,658.63
07/07/2010 Stop Pmt Charge       Stop Payment Charge            25.00
07/07/2010 Overdraft Charge                                     25.00
           Item(s) Presented 07/06/2010
07/08/2010 Overdraft Charge                                     50.00
           Item(s) Presented 07/07/2010
07/08/2010 Return Check Chrg                                    25.00
           Item(s) Presented 07/07/2010
07/09/2010 Overdraft Charge                                    125.00
           Item(s) Presented 07/08/2010
07/12/2010 Transfer Withdrawal  Ref 07/09/2010             22,923.26
07/12/2010 Transfer Withdrawal  W/T BEAN TO MALTECO        16,500.00
07/12/2010 Overdraft Charge                                     25.00
           Item(s) Presented 07/09/2010
07/12/2010 Transfer Charge      W/T BEAN TO MALTECO FEE         15.00
07/13/2010 Overdraft Charge                                     75.00
           Item(s) Presented 07/12/2010
07/14/2010 Overdraft Charge                                    150.00
           Item(s) Presented 07/13/2010
07/15/2010 Overdraft Charge                                    275.00
           Item(s) Presented 07/14/2010
07/16/2010 Overdraft Charge                                    175.00
           Item(s) Presented 07/15/2010
07/19/2010 Transfer Withdrawal                              5,000.00
07/19/2010 Overdraft Charge                                    100.00
           Item(s) Presented 07/16/2010
07/22/2010 Transfer Withdrawal                             10,100.00
           W/T BEAN LUMBER TO UNION PACIFIC RR
07/22/2010 Transfer Charge                                      15.00
           W/T BEAN LUMBER TO UNION PACIFIC RR FEE
07/23/2010 Overdraft Charge                                    125.00
           Item(s) Presented 07/22/2010
07/26/2010 Overdraft Charge                                    150.00
           Item(s) Presented 07/23/2010
```

104002944

Jul 31, 2010

Pg   7 of   8

Bean Lumber Co., Inc.

| | | |
|---|---|---|
| 07/27/2010 | Transfer Withdrawal | 56,454.40 |
| 07/27/2010 | Stop Pmt Charge      Stop Payment Charge | 25.00 |
| 07/27/2010 | Return Check Chrg | 50.00 |
| | Item(s) Presented 07/26/2010 | |
| 07/28/2010 | Overdraft Charge | 50.00 |
| | Item(s) Presented 07/27/2010 | |
| 07/29/2010 | Transfer Withdrawal | 5,005.00 |
| 07/29/2010 | Transfer Withdrawal   W/T BEAN TO MALTECO | 15,500.00 |
| 07/29/2010 | Overdraft Charge | 100.00 |
| | Item(s) Presented 07/28/2010 | |
| 07/29/2010 | Return Check Chrg | 25.00 |
| | Item(s) Presented 07/28/2010 | |
| 07/29/2010 | Transfer Charge   W/T BEAN TO MALTECO FEE | 15.00 |
| 07/30/2010 | Overdraft Charge | 100.00 |
| | Item(s) Presented 07/29/2010 | |
| 07/31/2010 | Service Charge | 0.72 |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | 1,575.00 | 2,625.00 |
| Total Return Item Fees | 225.00 | 525.00 |

------------------------- Daily Ending Balance -------------------------

| | | | | | |
|---|---|---|---|---|---|
| 07/01 | 131,633.31- | 07/14 | 127,725.58- | 07/23 | 67,255.26- |
| 07/02 | 39,678.63- | 07/15 | 148,382.40- | 07/26 | 59,170.66- |
| 07/06 | 4,937.70- | 07/16 | 85,222.56- | 07/27 | 80,961.83- |
| 07/07 | 137,067.90- | 07/19 | 24,677.44 | 07/28 | 124,363.35- |
| 07/08 | 149,767.10- | 07/20 | 62,677.44 | 07/29 | 90,239.79- |
| 07/09 | 35,904.49- | 07/21 | 86,505.77 | 07/30 | 74,140.59- |
| 07/12 | 83,871.25- | 07/22 | 211,854.78- | 07/31 | 74,141.31- |
| 07/13 | 164,543.76- | | | | |

-----Original Message-----
From: John Kimmey [mailto:jkimmey@vc-alternative.com]
Sent: Sunday, October 03, 2010 9:15 PM
To: gbean@beanteam.com
Subject: RE: Update

We go after Gary with pressure...Starting tomorrow.

-----Original Message-----
From: gbean@beanteam.com [mailto:gbean@beanteam.com]
Sent: Sunday, October 03, 2010 8:07 PM
To: John Kimmey
Cc: ben@gallingroupintl.com
Subject: RE: Update

>


Guys, this is not something to discuss on sunday night because it is for
family but think aboutnthis and we can discuss Monday  I am really
beginning  doubt Andys validity  his stories aren't matching up week to
week and I really think he wouldn't let John pursue abridge loan because
he didn't want to be responsible for having to back it up. He has
seriously jepordised this company because i made decisions based on his
"assurance" of the first million by July 15th and then the bridge loan
later on. We could have slowed production months ago and not been in the
situation we are now. Why will he not let us monotize our loan?  And he
won't send any letter assuring that the money is actually there. I am
really beginning to get upset at the guys lack of honesty and inability to
be forthright.

Are there any answers???


Grady




>
To> Can we please obtain this information on Maltek letterhead that we can
> formally provide to the banks ?  My understanding is that this is the
> collateral Grady has been desperately seeking to clarify with the Banks on
> the conference call with you before I left for NYC and Boston.  Please
> advise if there is anything I can assist with in providing this document
> for
> Mr. Bean.
>
> John
>



ZEMIS-Nr./No SYMIC/N. SIMIC    016.443.410-2

Name / Nom / Cognome
**Kirsch**

Vorname / Prénom / Nome
**Willy Andreas**



Unterschrift des Inhabers / Signature du titulaire / Firma del titolare

A 20398818

Veuillez lire les prescriptions au verso

ZEMIS-Nr./No SYMIC/N. SIMIC    016.443.410-2

Kant.-Ref.-Nr. / No réf. cant. / N. rif. cant.    GE/64986/tb

Autorisation de séjour              CE/AELE
valable pour toute la Suisse
jusqu'au              03.06.2015    **B**

Name / Nom / Cognome
**Kirsch**

Vorname / Prénom / Nome
**Willy Andreas**

Geburtsdatum/Date de naissance/Data di nascita  23.07.1962

Staatsangehörigkeit / Nationalité / Nazionalità
**République fédérale d'Allemagne**

Wohnort / Adresse / Indirizzo
c/o Hôtel Ambassador
Place de Chevelu, 1
1201 Genève Secteur de dist.

Aufenthaltszweck / But du séjour / Scopo del soggiorno
Activité lucrative autorisée

A 2039881

Einreisedatum / Date d'entrée / Data di entrata  04.06.2010



*"ALL YOUR INSURANCE SOLUTIONS UNDER ONE ROOF"*

To whom it may concern:

In regards to the policy Malteco carries it is currently being endorsed to Andy Kirsch. Since Andy was

the prior owner of Malteco and is currently a named insured on the policy the policy will move over into

his name. The policy is currently active and Andy Kirsch currently has coverage on the policy.

Should you have any question or need anything please contact me.



**ACORD** EVIDENCE OF PROPERTY INSURANCE

DATE (MM/DD/YY) 11/18/2008

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | PHONE (A/C, No, Ext): 954-962-8014 | COMPANY |
|---|---|---|
| Behnke & Associates, Inc. | | Admiral Insurance Company |
| 1565 Taft St., Ste. 104 | | |
| Hollywood, FL 33024 | | |
| Jason Behnke | | |

| FAX (A/C, No): 954-964-3422 | E-MAIL ADDRESS: |
|---|---|

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID #: MALTE-1 | |

| INSURED Malteco Business Consulting | LOAN NUMBER | POLICY NUMBER TBA |
|---|---|---|
| Andy Kirsch | | |
| 1826 W Walnut Hill Ln #120 | EFFECTIVE DATE 1/18/08 | EXPIRATION DATE 1/18/2010 | CONTINUED UNTIL TERMINATED IF CHECKED |
| Irving, TX 75038 | THIS REPLACES PRIOR EVIDENCE DATED: | |

## PROPERTY INFORMATION

LOCATION/DESCRIPTION
1826 W Walnut Hill Ln #120

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE | PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|---|
| Professional Liability | | 5,000,000 | 25,000 |
| Errors & Omissions | | 5,000,000 | 25,000 |

## REMARKS (Including Special Conditions)

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL ___30___ DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| | MORTGAGEE | ADDITIONAL INSURED |
| | LOSS PAYEE | |
| | LOAN # | |

AUTHORIZED REPRESENTATIVE
Jason Behnke

ACORD 27 (2003/07)

© ACORD CORPORATION 1993-2003. All rights reserved.

The ACORD name and logo are registered marks of ACORD



 **MALTEK International SARL**

Date: August 17, 2010

To: Bean Lumber

Attn: Grady Bean

Ref: Credit Line

We would like to inform you that Bean Lumber Credit is established. Due to the financial Summer Break and Summer Vacation in Europe we have experienced delays in moving the funds from our source to Bean Lumber. We apologize for the delay and we are working closely with our CL source to resolve this issue.

We expect this matter will be resolved in a timely manner.

If you have any questions, please feel free to contact us any time.

Sincerely,

Andy Kirsch, President

Lamartine 27, Geneva, 1203
Phone: Geneva +41 (0)79 9244845 USA +1 972 533 5346
andykirsch@maltekinternationalsarl.com





# MALTEK International SARL

Date: August 20, 2010

To: Bean Lumber

Attn: Grady Bean

Ref: Credit Line/Follow Up

In reference to Credit line letter August 17, 2010 we are providing requested update. Due To do the financial Summer Break and Summer Vacation in Europe, we have experienced delays for moving the funds from our source to Bean Lumber. We are apologizing for the delays and we working closely with our CL source to resolve this issue. The funds transferred from European Funding Group are subject to International and US Banking laws. Maltek International SARL does not anticipate any regulatory or compliance issues at this time. Maltek International SARL expects these funds to clear in 17 International and /or US bank workdays. The release must also consider any pending regulatory or banking additional compliance matters. If needed please contact me directly. We are working diligently to resolve and address all our clients at this time.

Sincerely,

Andy Kirsch, President

Rue Lamartine 27, Geneva, 1203
Phone: Geneva +41 (0)79  9244845 USA +1 972 533 5346
andykirsch@maltekinternationalsarl.com



**From:** Gary Hacker [mailto:gh@malteco.com]
**Sent:** Wednesday, October 20, 2010 1:41 PM
**To:** gbean@beanteam.com
**Subject:** Re: letter

Grady,
I am pressed for time but quickly I think we are about ten days away from cash. The bank has accepted SBLC via MT799 and the process is going.

On Wed, Oct 6, 2010 at 11:30 AM, Gary Hacker <gh@malteco.com> wrote:

**Grady,**
**I got this email with no content. Please send me you contact information and summary of you deal.**

**Best regards,**
**Gary Hacker**
**Malteco Business Consulting Group**
**1825 W. Walnut Hill Lane**
**Suite 120**
**Irving, TX 75038**
**972-331-2557**
**469-450-6552 cell**
**972-331-2562 fax**
*gh@malteco.com*

Notice: Any Statements made in these email communications are not binding unless and until mutually satisfactory agreements memorializing the subject matter of the transmissions are executed by hand, in ink and hard copies are exchanged between the parties. Information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.

--
**Best regards**
**Gary D. Hacker**
**Malteco Business Consulting Group**
**1825 W. Walnut Hill Ln**
**Irving**, Texas 75038



**From:** Gary Hacker [mailto:gh@malteco.com]
**Sent:** Tuesday, October 26, 2010 10:36 AM
**To:** gbean@beanteam.com
**Subject:** Re: Update

Mr. Bean,

Andy and I briefly discussed those tactics and while we are not sure the method we will use the quickest way possible.  This is in the final stages and will be winding up very soon.

On Tue, Oct 26, 2010 at 10:12 AM, <gbean@beanteam.com> wrote:

Gary ,

   Checking to see about updates since Friday.  Also do you have any knowledge concerning if the funds will be wired directly to us or another US bank first?  I know that this will affect the date we recieve.


Grady Bean



--
**Best regards**
**Gary D. Hacker**
**Malteco Business Consulting Group**
**1825 W. Walnut Hill Ln**
**Irving, Texas 75038**
**gh@malteco.com**
**972-331-2557 phone**
**972-331-2562 fax**



**Reply, Reply All or Forward | More**



**From:** Gary Hacker [mailto:gh@malteco.com]
**Sent:** Monday, November 08, 2010 11:05 AM
**To:** gbean@beanteam.com
**Subject:** Re: Update

I expect the contract to be in place the first part of this week and of course cash directly following. Andy is in Vietnam and it is a little difficult to connect but I expect to later this evening>

On Mon, Nov 8, 2010 at 10:39 AM, <gbean@beanteam.com> wrote:

Gary ,
    I know business day is almost done in Europe and I wantedbto see if you had an update from the bank or Andy

Grady Bean

--
**Best regards**
**Gary D. Hacker**
**Malteco Business Consulting Group**
**1825 W. Walnut Hill Ln**
**Irving, Texas 75038**
**gh@malteco.com**
**972-331-2557 phone**
**972-331-2562 fax**

**Reply, Reply All or Forward | More**



> -----Original Message-----
> From: Andy Kirsch [mailto:andykirsch@maltekinternationalsarl.com]
> Sent: Sunday, October 03, 2010 10:00 AM
> To: gbean2@vzw.blackberry.net
> Cc: 'John Kimmey'; 'Ben W. Gallinger'
> Subject: RE: Update
>
> Mr. Bean, The bank issuing a SBLC and not Cash for credit line. This means
> I
> have to monetize the this financial instrument. I am in Rome for this
> purpose mid next week. At the mean time, I have two  more bank meeting
> tomorrow and 5 more for the rest of this week. I expect a resold  for
> these
> this week. Sorry for this delay which is completely out my control.
> Another step which we need to take to complete this process.
> I will update you at soon I have more detailed answers.
>
>
> Andy Kirsch, President
>
> Maltek International
> Rue Lamartine 27
> Geneva, 1203
> +41 (0)79 9244845
> andykirsch@maltekinternationalsarl.com
> Skype:  andy.kirsch
>
> -----Original Message-----
> From: gbean2@vzw.blackberry.net [mailto:gbean2@vzw.blackberry.net]
> Sent: Sunday, October 03, 2010 9:13 AM
> To: andykirsch@maltekinternationalsarl.com
> Subject: Update
>
> Andy,
>     This is Grady Bean.  Haven't heard anything in a couple days and I
> was
> looking for an update.  The main lender that we decided not to take out is
> making demands.
>
> Thanks
> Grady
> Sent from my Verizon Wireless BlackBerry



> 
> -----Original Message-----
> From: gbean@beanteam.com [mailto:gbean@beanteam.com]
> Sent: Thursday, November 25, 2010 1:23 PM
> To: andykirsch@maltekinternationalsarl.com
> Subject: [Fwd: Problems]
> 
> -------------------------- Original Message --------------------------
> Subject: Problems
> From:    gbean@beanteam.com
> Date:    Thu, November 25, 2010 6:20 am
> To:      andykirsch@maltecinternationalsarl.com
> --------------------------------------------------------------------------
> 
> 
> Andy,
>     I didn't hear from you yesterday and my main lender blew up.  They
> are really upset that Gary told them money would be moving Tues and
> it didn't. They told me if money is not moving by the 30th they are
> calling my loan!
> 
> They are owned by Catapillar which is worldwide and they said they were
> going to contact the bank and verify the legitimacy of the loan.  They are
> convinced we are never getting money.
> 
> I really need some help here Andy. I need something legit to get them to
> calm down.
> 
> Is there any chance of money by next week? Honestly
> Hope you are feeling better
> 
> Grady
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 



-----Original Message-----
From: Ben W. Gallinger [mailto:ben@gallingroupintl.com]
Sent: Tuesday, December 14, 2010 3:22 PM
To: gbean@beanteam.com
Subject: FW: aisa


Best Regards,
Ben W. Gallinger
Ben Gallinger
ben@gallingroupintl.com
www.gallingroupintl.com
(866) 650-PINE toll free
(503) 625-5641 fax
(469) 744-1051 cell



FYI ...tell Grady...I ve been on this all day...CONFIDENTIAL..... "Merrill
Is Our Broker. We Have Things Under Control. ".... answer I vve been
fighting for since pre dawn


-----Original Message-----
From: Shelly Bay Capital [mailto:amello@shellybaycapital.com]
Sent: Tuesday, December 14, 2010 9:40 AM
To: Christophe Schwoertzig
Cc: John Kimmey
Subject: Re: aisa

I'm on the phone.

Merrill is our broker. We have things under control.



**From:** Ben W. Gallinger [mailto:ben@gallingroupintl.com]
**Sent:** Wednesday, December 15, 2010 10:44 AM
**To:** gbean@beanteam.com
**Subject:** Internet Postings Garrison Securities
**Importance:** High

Grady,

Here is the response from Garrison Securities about the internet postings that are online about them.  Attached is a letter from their Attorney.

Andy knows Garrison Securities, however, your transaction has nothing to do with Garrison Securities.

Your transaction will monetize directly from a Financial Institution in form of a Bank.

Best Regards,

*Ben W. Gallinger*

Ben Gallinger

ben@gallingroupintl.com

www.gallingroupintl.com

(866) 650-PINE toll free

(503) 625-5641 fax

(469) 744-1051 cell



Dear Mr. Kirsch,

Thank you for notifying my colleague of the defamatory posting. The posting referenced is amongst a small number of libellous internet articles of an untrue, incorrect and detrimental nature concerning our Company and its senior personnel. As far as we can ascertain the postings have been made by one US-based brokerage, in an illegal attempt at defamation and coercion.

The information contained in these postings is without substance and we refute all accusations of fraud, misrepresentation and misdirection. Our attorneys are in regular contact with the local authorities and to date neither the broker nor the client in question has filed a criminal complaint against our Company. Put simply, the postings are malicious in intent and fallacious in content.

The dispute referenced within the postings is being addressed by the ICC International Court of Arbitration, however we have had difficulty serving notice to the client as they are 'unavailable' at their registered address. The dispute originates from the client failing to disclose, when questioned, numerous companies mismanaged into bankruptcy under their control. Under the terms of our contract this constituted a material omission and was a blatant attempt at concealing the true credit risk associated with the client: the transaction was duly terminated and the fees charged to the client were retained against costs.

With respect to the author of the articles, we have commenced both criminal and civil legal action and will shortly be taking similar actions against the web sites hosting such libellous and wrongful statements about us. External legal counsel have been retained to address the matter; please see the attached letter for further details. A US based attorney has also been retained.

It sadly remains the fact that anyone can post anything they wish on the internet without having any requirement of substance or claim. However if you remain concerned about the statements made about us, either Paul, Dan or myself are available to discuss the matter in further detail. In the alternative we can arrange for you to discuss the matter with our attorneys direct.

I trust this alleviates any concerns you may have, however I remain at hand should you require anything further information.

Yours sincerely,


Nick Fox
Legal & Administration
**Garrison Securities SA**


http://www.garrisonsecurities.com

Bâtiment Banque Nationale Suisse
Rue de la Paix 6
Lausanne
CH - 1003
Switzerland

Central: +41 21 341 1330
Fax: +41 21 341 1339

This confidential business information is provided to sophisticated and accredited individuals, FOR INFORMATIONAL PURPOSES ONLY, in response to a request from you for information. The information is not intended for distribution to, or use by, any person (or entity) resident in any jurisdiction or country where such distribution or use would be contrary to law or regulation, or which would subject Garrison Securities SA to any registration requirement within such jurisdiction or country.

Neither the information nor any opinion contained herein constitutes a solicitation or offer by Garrison Securities SA to buy or sell any securities, futures, options or other financial instruments or provide any investment advice or service. Any enterprise contemplated hereunder is strictly one of private introduction and, in no way relies upon (nor is related to) current Securities laws and regulations, and does not involve the sale of registered securities.

Garrison Securities SA acts as a regulated broker/intermediary for the introduction to securities/bank debentures trading transactions. Garrison Securities SA and its officers, directors, and employees are not traders, banking officers or government employees; nor are they affiliated with, or endorsed by, any financial institution, government or government agency. Garrison Securities SA does not render investment or legal advice and makes no warranties or representations as to information provided. Any due diligence is the responsibility of the recipient. The communications between Garrison Securities SA (including any marketing materials) and the recipient contain confidential and/or legally privileged information belonging to Garrison Securities SA. Any unauthorized use, disclosure or transmission of any information contained herein or received by the recipient is strictly prohibited.

If you have received access to the website or received any communications from Garrison Securities SA in error, you are requested to notify Garrison Securities SA immediately, by return e-mail or telephone (+41.21.341.13.30), and to destroy any access details, e-mail communications, including all attachments and any other form of documentation in their entirety. Upon receipt of this information or documents, the recipient hereby acknowledges this disclaimer. If acknowledgement is not accepted, the recipient must return any and all documents in their original receipted condition to sender.

All correspondence transmitted via email or equivalent internet communication systems are unencrypted and as such Garrison Securities SA does not guarantee that the content of this communication comes from an authorised source. If the authenticity of this communication is doubted please contact our head office on +41.21.341.13.30 immediately and ask to speak to a member of our Compliance Department.

Any and all transactions described or information provided shall be subject to our standard conditions of trading, unless expressly stated and mutually agreed to the contrary. Garrison Securities SA are regulated in Switzerland for the business of Representation activities, intermediation, trust and

brokerage in the financial sector.

Registered Office: Rue de la Paix 6, Lausanne , CH-1003. Switzerland .

$$|M|^C|E|$$ AVOCATS
www.mcelegal.ch

JEAN-PAUL MAIRE
Avocat au barreau
Docteur en droit
MCJ University of Texas
YVES HOFSTETTER
Avocat au barreau
Docteur en droit
LAURENT MAIRE
Avocat au barreau
LL.M. European Law
ANTOINE EIGENMANN
Avocat au barreau
Docteur en droit
Chargé de cours
a l'Université de Fribourg
FIORENZO COTTI
Avocat au barreau
Notaire au Tessin
NICOLAS ROUILER
Avocat au barreau
Docteur en droit
Professeur invité à l'Académie
d'économie politique
du gouvernement de Russie
GASPARD COUCHEPIN
Avocat au barreau
Docteur en droit
Notaire en Valais
COLETTE LASSERRE ROUILER
Avocate au barreau
Docteur en droit
ANNE GRIESSEN COTTI
Avocate au barreau MAES
MURIEL VAUTIER
Avocate au barreau
Docteur en droit
Spécialiste FSA en responsabilité
civile et droit des assurances
TIPHANIE CHAPPUIS
Avocate au barreau
DESS en criminologie
SABINE COMISETTI
Avocate au barreau
LL.M. European Law
FLORIAN DUCOMMUN
Avocat au barreau
LL.M. McGill University
CAROLA MASSATSCH
Avocate au barreau
GÉRALDINE CHAPUIS RAPIN
Avocate au barreau de Marseille
DESS en droit des Affaires
Magistère en fiscalité de l'entreprise
GIUSEPPE COTTI
Avocat-stagiaire
YAN SCHUMACHER
Avocat-stagiaire
DEA en droit
des nouvelles technologies
LINDA GARCIA
Avocate-stagiaire
FRANÇOIS CHANSON
Avocat-stagiaire
NILS KAPFERER
Avocat-stagiaire
ARES BERNASCONI
Avocat-stagiaire, MLaw Lucerne
SIMON PERROUD
Avocat-stagiaire
ANTHONY KALBFUSS
Avocat-stagiaire
ARNAUD THIÉRY
Avocat-stagiaire

CONSEILS:
CLAUDE ROUILER
Ancien Président du Tribunal fédéral
et professeur à l'Université de Neuchâtel
Juge au Tribunal du BIT
Président du Tribunal
de la Bourse Suisse (SIX)
LUCIEN GANI
Docteur en droit
Licence H.E.C.
Avocat-conseil
JEAN-PIERRE MÉAN
Docteur en droit
LL.M. Harvard Law School
Avocat-conseil

MEMBRES DE LA FSA

**To whom it may concern**

October 29th, 2010

**GARRISON SECURITIES S.A: arbitration procedure and criminal complaint (libel, defamation and attempt of coercion)**

Sir, Madam,

We are the lawyers of GARRISON SECURTIES S.A.

This letter is written in reaction of the misleading accusations that Garrison Securities and its directors are currently suffering from.

On October 5th 2009, GARRISON SECURITIES S.A entered into an agreement with a client. A commercial dispute has arisen between this client and Garrison Securities S.A. On October 22nd 2010, GARRISON SECURITIES S.A began a commercial arbitration in Geneva in accordance with the procedure set forth within the agreement signed between GARRISON SECURITIES S.A and the client.

This client and his broker started to spread misleading information regarding GARRISON SECURITIES S.A. This action is aimed at putting pressure on GARRISON SECURITIES S.A to refund monies that it feels rightfully belongs to it. Libelous and defamatory articles about GARRISON SECURITIES S.A and its directors have also been published on the Internet.

**The information and accusations contained in the articles are strongly contested. A criminal complaint for attempt of coercion, libel and defamation has been filed in Switzerland on October 18th 2010 by GARRISON SECURITIES against this client and his broker.**

For GARRISON SECURITIES S.A:

Antoine Eigenmann

Attorney at Law

LAUSANNE   Grand-Chêne 1-3 · Case postale 6868, CH-1002 Lausanne   Tél +41 (0)21 312 88 88 · Fax +41 (0)21 312 88 77
LOCARNO    Via della Posta 2 · Casella postale 1545, CH-6600 Locarno   Tél. +41 (0)91 756 22 66 · Fax +41 (0)91 756 22 67
MARTIGNY   Avenue de la Gare 56 · Case postale 232, CH -1920 Martigny   Tél. +41 (0)27 720 48 88 · Fax +41 (0)27 720 48 89

**From:** Ben W. Gallinger [mailto:ben@gallingroupintl.com]
**Sent:** Wednesday, December 15, 2010 5:29 PM
**To:** 'Grady Bean'; 'John Kimmey'
**Cc:** 'Scott Steele'; legal@gallingroupintl.com; 'Ben W. Gallinger'
**Subject:** RE: lawsuit
**Importance:** High

Grady,

After some thought and consideration on this e-mail below I have come to the following decisions.

Please consider this e-mail as my formal parting of ways with Bean Lumber Company and Curt Bean Lumber Companies.

I feel that I have gone above and beyond the call of duty of a "LUMBER SALESMAN" in coordinating people that I know outside of the Bean Lumber realm to help facilitate a loan for you and your company.

The assumptions below are considered by myself to be both assumptive and insulting and I won't tolerate it. I have been working for free for the past 6 months for you and your company by acting as a middle man of information from an entity that you freely and willingly entered into a financial agreement with.

For you to assume that I have had or do have any other alternative motives other than getting Bean Lumber running again is insulting.

Best of luck to you in your future efforts for funding Bean Lumber and in re-establishing a relationship with UFP as a client.



**From:** Grady Bean [mailto:hshfinc@cablelynx.com]
**Sent:** Wednesday, December 15, 2010 6:05 AM
**To:** 'John Kimmey'
**Cc:** 'Ben W. Gallinger'
**Subject:** lawsuit


John and Ben,

I am informing you this morning that Bean Lumber Company is cutting our ties with Mr. Andrew Kirsch. We are, along with our lending institution, First Capital Credit Corporation in Atlanta , GA filing suit on Mr. Kirsch, his company and all involved parties for Corporate Fraud, International Bank Fraud, and International Wire Fraud. First Capital is agreed to help fund the lawsuit and their attorneys in Atlanta feel strongly that we have a very good case for recovering punitive damages also. Of course they are doing this to help recover some of their money eventually. We are also reporting him to the proper authorities so that they may help in the investigation. Their attorneys have been working on this for about a week and feel that through his emails and witnessed phone conversations he has made false promises that have caused irrevocable harm to our company.

Today is the 15th which we were told repeatedly he had to fund by and that is as long as they were willing to wait. The email that he sent Saturday pertaining to Garrison Securities being involved was the last straw. One of their officers researched Garrison and sent me a copy of some very disturbing news that I am forwarding to you directly after this email.

They are preparing the filing as we speak and I suspect in the next few days everyone will be getting notification.

I am very sorry that it has come to this, I do believe that you guys have had very sincere intentions and I do not wish to cause anyone, especially  you guys any undo problems, but it I have no choice because of the bank. I have to be honest, after the email on Garrison and Andy's failure to produce anything satisfactory for the Tulsa attorneys; I also have lost my faith in him being an honest man. I sincerely hope that he has acted solely in this scam and has not put other good people at risk.


I am requesting that this email not be shared with anyone other than you as a copy is being turned over to the attorneys.


The email will follow shortly.


Grady Bean

--- On **Wed, 3/23/11, Billy Parlin *<bparlin@bellsouth.net>*** wrote:

From: Billy Parlin <bparlin@bellsouth.net>
Subject: Bean Lumber
To: "Scott Traut" <boyd_law_firm@yahoo.com>
Cc: "Andy Kirsch" <ak@malteco.com>
Date: Wednesday, March 23, 2011, 10:17 AM

Scott, Andy has decided to refund your client's money. He is still upset about the threats
and allegations that your client made.
He will pay the money back just as he received it, being $ 12,000.00 every two weeks.
Blly



**From:**        Billy Parlin [bparlin@bellsouth.net]
**Sent:**        Wednesday, November 06, 2013 8:47 AM
**To:**          Charlie
**Subject:**     update

Charlie, I just got off Skype with Andy. I, of course, do not have any verification, but I have been told,
John Marie is in Hong Kong.
John Marie will be in Ho Chi Minh City on Friday.
John Marie & Dino meet Saturday to execute contracts.
My understanding is on Sunday both will travel to Singapore, on Monday another account will be opened.
Gets blurry here, later, I am assuming by Wednesday or Thursday they will travel to Hong Kong to transfer funds.
Then the funding process starts, takes 5 business days from the start for Andy to receive any Funds-may take longer since funds will be coming out of New Zealand.
Out of initial funding, money must be used to reimburse fees, and pay additional fees. Not sure how much. Once done, then clients paid pursuant to contracts.
Once John Marie and Dino actually execute contracts, and we are apparently dealing with big egos, and are in Singapore, I will update you.
I may have misspoke earlier, the filing of the lawsuit _may delay payment._ The reason is that funds will not be sent based on the allegations and demands of litigation. I have not read, but I understand that the funding agreement is for a specific project, and must be used for that purpose. Also, I am informed that the contract is a "best effort" contract, and that all clients are informed not to make any business decisions nor obligate themselves prior to the funds actually arriving.
I know there are always two sides to a story, I say three, my client's side, your client's side, and the truth, which is usually a combination of both.
Have a nice day.
Billy Parlin
Attorney at Law
2112 Bienville Boulevard
Armand Place, Suite J
Post Office Box 577
Ocean Springs, MS 39566-0577
(228) 872-7071 Office Phone
(228) 872-0499 Office Fax
(228) 235-4192 Cell Phone
bparlin@bellsouth.net
MSB #4022



**From:** Billy Parlin <bparlin@bellsouth.net>
**Date:** August 19, 2013, 6:49:02 PM CDT
**To:** Boyd Law Firm <boyd_law_firm@yahoo.com>
**Subject: Re: Andy**
**Reply-To:** Billy Parlin <bparlin@bellsouth.net>

Charlie, you can give me 48 or 72 hours, but it will not be settled until John Marie gets to Singapore, opens the account and starts sending Andy money.

I know you do not believe Andy will ever pay without being made too, so go ahead and file. I understand that, and I understand that for years there have been promises that have been broken.

Once Andy is in a position to settle, I will contact you. Meanwhile, a demand would be nice so that I can give Andy a heads up. Heck, file and we may be able to enter an Agreed Judgment, but first I must know what you client thinks he is entitled too.

*I am not asking you to wait to file*, what I am asking for is a reasonable demand, with some justification for the amount requested. You also need to know that the filing or not filing will not delay or expedite funding for Andy. However, the filing, in my opinon, will not entitle your client to a greater sum that he would already be entitled.

Billy Parlin
Attorney at Law
2112 Bienville Boulevard
Armand Place, Suite J
Post Office Box 577
Ocean Springs, MS 39566-0577
(228) 872-7071 Office Phone
(228) 872-0499 Office Fax
(228) 235-4192 Cell Phone
bparlin@bellsouth.net
MSB #4022

**From:** Boyd Law Firm [mailto:boyd_law_firm@yahoo.com]
**Sent:** Friday, March 18, 2011 12:21 PM
**To:** Billy Parlin
**Cc:** hshfinc@cablelynx.com
**Subject:** Re: Andy Kirsch/Bean Lumber

Thank you for your prompt reply.  I forwarded this e-mail along to Mr. Bean and spoke with him about where to go from here.  If what Mr. Kirsch is offering in writing is to either fund Bean Lumber in two weeks or give the initial investment back, then that would be an acceptable compromise.  I would need a signed good faith letter some time today or over the weekend (e-mailed or fax is fine) documenting the basic agreement.  We can flesh everything else out in the coming week.  If Mr. Kirsch can actually make this work, then I see no reason to waste a year on litigation.

On a note, Texas Law is designated in the choice of law clause in the current contract.  A forum was not chosen.  I would not have mentioned suit had it been otherwise until I found a lawyer in that forum.

Sincerely,

R. Scott Troutt
The Boyd Law Firm
P.O. Box 3494
Little Rock , AR 72203
(501) 372-0770
(501) 372-1807 Fax

**Subject:** Re: Andy

**From:** Billy Parlin (bparlin@bellsouth.net)

**To:** boyd_law_firm@yahoo.com;

**Date:** Tuesday, August 13, 2013 9:27 AM


Charlie, this is the formation that has been provided to me.
John Marie-the person that is going to provide the funds, and Deano-the person that is actually putting the money up for the funding have agreed to the terms and conditions.  John Marie, yesterday, applied for his visa to go to Saigon. He told Andy it would take about three (3) days to get the visa, and then he would be traveling to Saigon-he did not give an approximate travel date. Once there, he and Deano  (I am not sure this is close to the correct spelling, as he is Vietnamese and I am typing based on Andy's pronunciation, and he is German), they will complete the transaction, and travel together to Singapore to open the JV account. Once that is done, the contract pursuant to Andy calls for Andy to start receiving money within one banking week. The money will be wired to Andy, who will either wire directly to me or to his International Paymaster in New Zealand, who will wire to me. I will start disbursing once I receive funds.
I have not seen the contract between your client and Andy. I am under the impression that the contracts are for projects. You may to review the contract to see if there is a project involved. If there is, I understand that beyond the repayment of the initial investment, that payments will be paid pursuant to the progression of the project. I do not know what your client's contract entails, so you may want to review it.
This is the best info I have been provided.

Billy Parlin
Attorney at Law
2112 Bienville Boulevard
Armand Place, Suite J
Post Office Box 577
Ocean Springs, MS 39566-0577
(228) 872-7071 Office Phone
(228) 872-0499 Office Fax
(228) 235-4192 Cell Phone
bparlin@bellsouth.net
MSB #4022

---

**From:** Boyd Law Firm <boyd_law_firm@yahoo.com>
**To:** Billy Parlin <bparlin@bellsouth.net>
**Sent:** Thursday, July 11, 2013 1:18 PM
**Subject:** Re: Andy

We do we stand re your previous e/m of June 25?

The Boyd Law Firm
P.O. Box 3494
Little Rock, AR 72203
(501) 372-0770
(501) 372-1807 Fax

NOTICE: This electronic mail transmission may constitute an attorney-client
communication that is privileged at law. It is not intended for
transmission to, or receipt by, any unauthorized persons. If you have
received this electronic mail transmission in error, please delete it from
your system without copying it, and notify the sender by reply e-mail, so
that our address record can be corrected.

**From:** Billy Parlin <bparlin@bellsouth.net>
**To:** "boyd_law_firm@yahoo.com" <boyd_law_firm@yahoo.com>
**Sent:** Tuesday, June 25, 2013 4:18 PM
**Subject:** Andy


Charlie, I bet you thought I forgot your e-mail address. I just got off skpe with Andy, and all information
is in, and going on Euro-clear, when completed, Andy will provide codes to necessary parties. Based on
the information I have, Andy expects fthe inal contract to be executed this week, once done, and banks
do their compliance, initial funding-small percentage of total will be paid to Andy within 7 days.  I am
not exactly sure when the 7 day period is suppose to start, but I should know that by early next week.
Andy believes it will be within the 7 days, I believe it will take the entire 7 days. Once money is in
Andy's trust account, his international payee, who is in New Zealand, will wire me some funds to
disburse. Supposedly, within 14 days thereafter additional funds will be forthcoming, and I will wire
out. I anticipate leaving to meet Andy, based on the information I have now, mid July.
I will keep you updated on progress. When funds are sent, do you want to wire to your account or your
client's?
I know it has been a long wait, and I want to thank your client for his patience, I know it has been
hard on all of us and I know that he does not believe that Andy has been working on getting him
funded, and that Andy was just scamming him. I can assure you that Andy has put in 15 plus hours a
day working on getting everyone's contract fulfilled, I often talk to him at  2 or 3 a.m. his time.
Please thank your client for his patience.
Thanks again, and I will be in touch.
If anything changes, which has happened in the past, and I really really hope that it does not, I will
inform you. Otherwise, I should be back with you no later than next Tuesday or Wednesday will more
definite news.
Billy Parlin
Attorney at Law
2112 Bienville Boulevard
Armand Place, Suite J
Post Office Box 577
Ocean Springs, MS 39566-0577
(228) 872-7071 Office Phone

(228) 872-0499 Office Fax
(228) 235-4192 Cell Phone
bparlin@bellsouth.net
MSB #4022

**From:** Billy Parlin <bparlin@bellsouth.net>
**To:** Boyd Law Firm <boyd_law_firm@yahoo.com>
**Sent:** Monday, August 19, 2013 12:14 PM
**Subject:** Re: Andy

Charlie,  thanks for the heads up. Filing suit or not filing suit will not expedite the matter, and probably will not delay it either. When John Marie get to Singapore, and opens the account, and starts paying Andy, then Andy will start paying out the investors. As I stated, your client has a contract, and that contract, I believe, involves a project. From what I understand, Andy is paying the initial amount of the investment, and then as evidence of the project moving forward is provided, the balance of the funds will be paid. Since I have not seen any of the contracts,  I do not know exactly the terms of the agreement with your client.

I do know this, your client, nor anyone else will be paid this week, as John Marie is not in Singapore and thus he will not be paying out any funds this week, nor probably next week.

I will keep you informed as to when John Marie leaves for Saigon, and when he goes to Singapore, and when he opens the account, and when your client can expect funds.

Prior to filing suit, why do you not send me a demand, and I will forward to Andy. We may be able to work out an agreed judgment. Andy owes the contract, and I agree, he may not, that he owes some interest and attorney's fees. Of course, your client is going to have to comply with his obligations under the contract. A reasonable demand will give me time to discuss with Andy.

Billy Parlin
Attorney at Law
2112 Bienville Boulevard
Armand Place, Suite J

From: Billy Parlin <bparlin@bellsouth.net>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Boyd Law Firm" <boyd_law_firm@yahoo.com>
Date: Thursday, March 17, 2011, 6:59 PM

Scott, thank you for the letter. I think you do not have all of the facts regarding this matter, and what caused at least some of the delay. Apparently, the funding was not necessary and as such I do not see the "damages" you keep referring too. How can your client be damaged if Andy has in fact a funding date? Does your client want something in writing from Andy setting out the funding date?

Of course you can file suit, but to me that is counter-productive, when it is going to take you more than two weeks to get everyone into court. To wait two weeks does not seem unreasonable. I would think that you and your client would prefer an agreement setting out that if your client is not funded, then the repayment schedulue will be as follows....

As to your client, I know you have not seen the e-mails referring to his powerful friend in Congress and how he is going to have his friend sick the FBI on Andy. He weilds the threat of criminal prosecution in this civil matter as an bat.

In the contract, where does the forum for litigation agree too? Usually, in Andy's contracts, it is  Geneva , Switzerland .

By copy of this e-mail, I am informing Andy of your client's decision.

Billy

--- On **Thu, 3/17/11, Boyd Law Firm <*boyd_law_firm@yahoo.com*>** wrote:

> From: Boyd Law Firm <boyd_law_firm@yahoo.com>
> Subject: Re: Andy Kirsch/Bean Lumber
> To: "Billy Parlin" <bparlin@bellsouth.net>
> Cc: hshfinc@cablelynx.com
> Date: Thursday, March 17, 2011, 5:48 PM
>
> Thank you for your response. However, given the previous course of dealing between our clients, he does not find that offer acceptable. We really need to know by tomorrow how exactly the initial funds will be returned, if they will at all. Otherwise, I will be forced to file suit, naming Mr. Kirsch, Maltek International, Malteco, Mr. Hacker, Mr. Kimmel, and a myriad of other likely parties that seem to have something to do with this thing. Given the situation forced upon my client, I feel that there is plenty of culpability to go around.
>
> I am also highly confused about your suggestion that Mr. Kirsch does not "trust" Mr. Bean. It seems to come up a lot, and it is not a terribly productive suggestion.  Mr. Bean held up his end

of the bargain, and was capable of doing so.  If anyone's trust has rightfully been deteriorated through our clients' interaction, it is Mr. Bean's.

This is not the offer we were looking for.  Indeed, it is completely counterproductive.  Please tender a valid starting point by tomorrow so we can move forward.  Given the situation, I have been *extremely* generous towards your client.  I cannot do so any longer.


Sincerely,

R. Scott Troutt
The Boyd Law Firm
P.O. Box 3494
Little Rock , AR 72203
(501) 372-0770
(501) 372-1807 Fax

NOTICE: This electronic mail transmission may constitute an attorney-client
communication that is privileged at law. It is not intended for
transmission to, or receipt by, any unauthorized persons. If you have
received this electronic mail transmission in error, please delete it from
your system without copying it, and notify the sender by reply e-mail, so
that our address record can be corrected.

--- On **Wed, 3/16/11, Billy Parlin <*bparlin@bellsouth.net*>** wrote:

From: Billy Parlin <bparlin@bellsouth.net>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Boyd Law Firm" <boyd_law_firm@yahoo.com>
Cc: andykirsch@maltekinternationalsarl.com
Date: Wednesday, March 16, 2011, 7:02 PM

Scott, I talked to  Andy today about the issue, and he tells me that he should have Bean Lumber
funded within two weeks, and he can send  the paperwork for your review. It will be sanitized, as
he does not necessarily trust Mr. Bean. It is your client's decision.
Billy

--- On **Wed, 3/16/11, Boyd Law Firm <*boyd_law_firm@yahoo.com*>** wrote:

From: Boyd Law Firm <boyd_law_firm@yahoo.com>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Billy Parlin" <bparlin@bellsouth.net>
Date: Wednesday, March 16, 2011, 5:09 PM

Just following up to see if anything had been decided upon yet.

The Boyd Law Firm
P.O. Box 3494
Little Rock , AR 72203

(501) 372-0770
(501) 372-1807 Fax

NOTICE: This electronic mail transmission may constitute an attorney-client
communication that is privileged at law. It is not intended for
transmission to, or receipt by, any unauthorized persons. If you have
received this electronic mail transmission in error, please delete it from
your system without copying it, and notify the sender by reply e-mail, so
that our address record can be corrected.

--- On **Thu, 3/10/11, Billy Parlin** *<bparlin@bellsouth.net>* wrote:

From: Billy Parlin <bparlin@bellsouth.net>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Boyd Law Firm" <boyd_law_firm@yahoo.com>
Date: Thursday, March 10, 2011, 3:52 PM

Scott, remember, Andy is in Vietnam and will back on Monday. Until then, he is pretty
tied up with meeting etc. I will talk to him about your proposal on Monday. I would want
a written settlement agreement setting out the payments, etc. I am an sure that you do
also.
I am copying Andy with this so he will have a heads up.
Thanks,
Billy P

--- On **Thu, 3/10/11, Boyd Law Firm** *<boyd_law_firm@yahoo.com>* wrote:

From: Boyd Law Firm <boyd_law_firm@yahoo.com>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Billy Parlin" <bparlin@bellsouth.net>
Date: Thursday, March 10, 2011, 3:47 PM

Mr. Bean said I could offer a small extension on the amount of time to start
paying, and it can be done in increments. In exchange, however, I would Mr.
Kirsch must sign some form of a waiver of service on any potential lawsuit as a
good-faith gesture, and/or a secondary agreement to pay. No offense to your
client, we just want to make sure that we have documentation to back up the
promise to pay, and a way to enforce that agreement. Right now we are kind of
in the ether in terms of documented agreements.

Thanks,

R. Scott Troutt
The Boyd Law Firm
P.O. Box 3494
Little Rock , AR 72203
(501) 372-0770
(501) 372-1807 Fax

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

--- On **Mon, 3/7/11, andykirsch@maltekinternationalsarl.com** *<andykirsch@maltekinternationalsarl.com>* wrote:

From: andykirsch@maltekinternationalsarl.com
<andykirsch@maltekinternationalsarl.com>
Subject: Re: Andy Kirsch/Bean Lumber
To: "Billy Parlin" <bparlin@bellsouth.net>, "Scott Traut"
<boyd_law_firm@yahoo.com>
Date: Monday, March 7, 2011, 5:10 PM

Sent from my BlackBerry® Smartphone supplied by Swisscom

**From:** Billy Parlin <bparlin@bellsouth.net>
**Date:** Mon, 7 Mar 2011 14:24:11 -0800 (PST)
**To:** Scott Traut<boyd_law_firm@yahoo.com>
**Cc:** <andykirsch@maltekinternationalsarl.com>
**Subject:** Andy Kirsch/Bean Lumber

Scott, I apologize for misspelling your last name.
I am not sure why you gave Andy a seven (7) day deadline, when you know he is in Vietnam , and will not be back in Geneva and back at his office until Monday of next week. Additionally, I have made you aware that Bean Lumber paid the money in increments, and that Andy expects to repay the funds in the same manner it was forwarded to him. The short deadline will not only not get this matter resolved, but will probably insure that it takes longer to resolve. if you do file suit. I know that you must be receiving a lot of pressure from Mr. Bean. I had hoped that we could work together to work out a reasonable repayment of the funds.
I will be out of the office tomorrow, and back Wednesday.
Billy Parlin